Bunting *v.* Bunting, Appellant.

Argued October 30, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Abraham J. Levinson,* with him *David A. Kraftsow,* for appellant.

*David F. Kaliner,* for appellee.

OPINION BY BALDRIGE, J., December 13, 1944:

The husband seeks a divorce on the ground of desertion. The master appointed by the court, after hearing a large amount of testimony, recommended a divorce be granted. The learned court below overruled exceptions filed to the master's report, adopted his findings and conclusions and granted the divorce. The respondent appealed.

The parties were married April 17, 1915. A son, the only child, was born October 17, 1915. The libellant

is a mechanical engineer of wide experience. From 1921 to 1931 he spent much of his time abroad as a representative of American companies. From 1921 to 1927 he lived in Manchuria and China where he was accompanied by his wife and son. Later when he was employed in other countries the wife and son remained at home. Whether at home or abroad the husband provided ample funds for his family's maintenance. It was his practice during his married life to give his earnings to his wife, who deposited them in a bank in her name.

He testified that they lived a perfectly normal married life; that she made very few complaints; arguments were indulged in at times, but there were never really serious differences. He had resided in Philadelphia, but after his marriage moved to New Jersey where his wife lived. They kept their home there until August 1932 when his wife, owing to some difficulty she had with her stepmother, desired to move to Philadelphia where he had opened an office as a consultant engineer, after he had been out of employment for about a year. This arrangement, which was satisfactory to him, was carried out. During September 1932 he complained to his wife that moths had destroyed his felt hat and a few days later there were discussions between them in regard to the son's course he was to take in the Olney High School. On September 30 of that year the libellant bade his wife goodbye as usual and said he would be home for dinner and then went to his office. When he returned that evening he found she had removed all her belongings, the valuables they had acquired and most of the contents of the house. There was no evidence of any serious dispute or of the husband's conduct which precipitated the wife's action.

She admitted that on September 22, 1932, she consulted an attorney in regard to obtaining support if she left the libellant, but she said that she never

told him of her contemplated action. After she left he wrote to her asking for an appointment, but received no reply. He called her on the telephone a few days thereafter at her parent's home in Woodbury and asked for an explanation of her conduct, calling attention to the fact that she had been treated well and "had all the luxuries in the world." She replied: "I got all I want." When asked if she would not talk things over she hung up.

At this time there was on deposit in the bank in her name approximately $9,000. It was necessary for the libellant to file a bill in equity to prevent her using it. A settlement of this suit was reached by agreeing to an equal division of the money. She said to her husband at that time: "I don't want anything more to do with you. I am finished." No more conversations were had between the parties until April 1943, when she petitioned for an order of support. Her explanation of the delay was that she "didn't think about it," notwithstanding that she had consulted Mr. Watkins in 1932 in regard to obtaining support. She attempted to justify her leaving on the ground that her husband frequently scolded, was sarcastic, criticised her and their son, that he had a hateful and disturbing way, that he was indifferent and ignored her for days at a time and would refuse to speak to her. She was corroborated to some extent by the son, Oliver, whom she said the husband criticised severely for being lazy, indifferent to his studies, etc. Undoubtedly the father was very much interested in his son and he, an educated man, tried to direct his studies and keep him interested so that he would be properly prepared for such business or professional career as he would see fit to follow. No doubt there was some incompatibility in their views, but that did not justify her in leaving her husband.

She conceded that her husband never struck or abused her, nor was he given to profanity or excessive

drinking. As she withdrew from the common domicile and ceased marital relations with her husband, she was obliged to establish by the preponderance of evidence, facts that would entitle her to a divorce: *Ewing v. Ewing,* 140 Pa. Superior Ct. 448, 14 A. 2d. 149; *LaPietra v. LaPietra,* 153 Pa. Superior Ct. 131, 33 A. 2d 63. She failed to sustain the burden of proof.

It has been frequently held that there must be a repeated and continuous course of conduct not isolated occurrences, which renders the complaining party's condition intolerable and life burdensome to justify a cessation of marital relations. Slight and petty differences, or temporary irritation, or irregular acts of misconduct are not enough: *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 446, 174 A. 821; *Rose v. Rose,* 124 Pa. Superior Ct. 437, 188 A. 595; *Viney v. Viney,* 151 Pa. Superior Ct. 86, 29 A. 2d 437. Nor are arguments and discussions relating to money matters, periodic quarrels growing out of training of children sufficient to show a settled hate and estrangement such as to establish just cause for desertion: *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 541, 542, 180 A. 708.

Careful review of the testimony brings us to the conclusion that the wife's withdrawal from the common domicile and her continual refusal to live with her husband for the statutory period entitles him to a divorce.

The decree of the lower court is affirmed.