Wilson, Appellant, *v.* Wilson.

Argued November 9, 1948. Before RHODES, P. J., HIRT, RENO, ROSS, ARNOLD and FINE, JJ. (DITHRICH, J., absent.)

*Challen W. Waychoff*, with him *Waychoff, Maxwell & Waychoff*, for appellant.

*John E. Baily*, with him *W. Robert Thompson* and *Montgomery, Thompson & Baily*, for appellee.

OPINION BY RENO, J., January 14, 1949:

This divorce action was instituted by the husband alleging indignities. The master recommended the libel be dismissed, and the court below overruled libellant's exceptions and refused a decree.

Both the master and the lower court found the respondent's conduct sufficient to constitute indignities, but held that libellant did not prove that he was the injured and innocent spouse.

We have made a careful and independent examination of the evidence and reach the same conclusion.

The parties were married in 1932. Three children were born; one lived five years; and the other two were seven years and three years of age at the time of the hearing, and resided with their mother. Libellant owned and operated his own general mercantile and electrical repair shop in Khedive, Greene County. His wife took care of their home directly across the street and assisted him in the store. Their marital difficulties centered about various girls employed in the shop. Although libellant attempted to show that respondent could not get along with his girl clerks, his chief complaint concerns his wife's conduct towards Betty Shoemaker who started to work in the fall of 1943.

Libellant complains that his wife publicly called him and the Shoemaker girl opprobrious names and accused them of running around together. Respondent is charged with causing disturbances before customers in the store for the purpose of humiliating him. Her repeated outbursts are alleged to have discouraged patrons and caused the libellant's profitable business to decline. In February, 1944, libellant gave his wife a note for Betty directing the payment of certain bills. Respondent cut off the bottom part of the note which read "I hope to see you tonight Betty—Art," and she is accused of not giving the note to Betty. In March, 1944, respondent, in the presence of customers in the store, accused Betty Shoemaker of running around with her husband. The

two engaged in a hair-pulling contest, and respondent struck Betty's head on the cash register and threw her on the floor. When libellant learned of the fight he continued to live at home, but ended their relationship as husband and wife; and on May 31, 1944 he left his wife and children and moved to Waynesburg.

In a divorce action the burden is on the libellant not only to prove that the respondent by a course of conduct rendered his condition intolerable and life burdensome, but it must clearly appear that libellant was the innocent and injured party. *Taylor v. Taylor*, 142 Pa. Superior Ct. 441, 16 A. 2d 651; *Meligakes v. Meligakes*, 151 Pa. Superior Ct. 1, 28 A. 2d 815.

It is unnecessary for us to decide whether respondent's conduct was such as to warrant the severance of their marital ties. Our study of the record convinces us that the libellant is not the injured and innocent spouse.

In justification of her conduct respondent related several incidents which standing alone might be considered unimportant, but taken together were sufficient to arouse the ire and resentment of a normal and reasonable woman in love with her husband and fearful that she was losing his affection. Respondent admitted publicly using profane language relative to her husband and Betty Shoemaker. There was testimony that the parties got along together very well until Betty started to work. After that, libellant was found with her in the store acting in an amorous manner, at least indecorous conduct in the normal relationship of a married employer and a female employe. Betty admitted going to dinner with libellant on three or four occasions. Disinterested witnesses testified they saw them together at a carnival walking arm in arm; one time in the store she unzipped his coat and put a ribbon with a pencil on it around his neck; they were seen sitting very close together on a bench in the store touching one another; they went to the movies together; and he frequently took her home

from work at night. His conduct with Betty Shoemaker was a matter of common knowledge in the community. While the record lacks evidence of immorality between the two, respondent's apprehensions were certainly not without foundation.

The legal principles involved in this appeal are now so well settled that they scarcely need authority to support them. This Court has repeatedly stated that false and totally unproved accusations of immorality, together with conduct maliciously designed to humiliate and embarrass libellant in his business and social life may constitute indignities. *Di Stefano v. Di Stefano*, 152 Pa. Superior Ct. 115, 117, 31 A. 2d 357; *Knapp v. Knapp*, 152 Pa. Superior Ct. 412, 33 A. 2d 88. However, indignities are not grounds for divorce where they are provoked by the complaining party, provided the retaliation is not excessive. *Richards v. Richards*, 37 Pa. 225; *Kerr v. Kerr*, 115 Pa. Superior Ct. 18, 174 A. 820; *Deutsch v. Deutsch*, 141 Pa. Superior Ct. 339, 344, 14 A. 2d 586; *Philo v. Philo*, 154 Pa. Superior Ct. 563, 36 A. 2d 833. We do not condone respondent's conduct, but it is understandable. If respondent became unduly jealous as libellant charges, it was his own conduct with Betty Shoemaker which produced it, and it was within his power to allay his wife's feelings by discontinuing his improper relations with his employe. His feelings for this girl are clearly revealed by his refusal to discharge her. At the time of the hearing she was again working for him in his new shop in Waynesburg. While their relationship could have been platonic it would not so appear to a wife whose love for her husband might make her more distrustful than if she did not care for him. Respondent might have been more temperate in her accusations but she could hardly be expected to remain calm and complacent.

While we are not called upon to decide whether the husband's conduct would entitle the respondent to a divorce if she were the libellant, we are mindful of

President Judge KELLER'S words, "Conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to his wife rendering her condition intolerable and life burdensome": *Lowe v. Lowe*, 148 Pa. Superior Ct. 439, 442, 25 A. 2d 781. See also *Dearth v. Dearth*, 141 Pa. Superior Ct. 344, 15 A. 2d 37; *Wick v. Wick*, 352 Pa. 25, 42 A. 2d 76; *Macormac v. Macormac*, 159 Pa. Superior Ct. 378, 48 A. 2d 136.

Decree affirmed.