Celia *v.* Celia, Appellant.

Submitted March 24, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Oswald N. Bucci* and *Bucci & Bucci,* for appellant.

*Reuben Singer,* for appellee.

OPINION BY DITHRICH, J., July 15, 1949:

Our examination and review of the record in this divorce proceeding forces us to the conclusion that the master, who recommended a decree, and the learned court below, which approved the master's report and entered the decree, could have done so only in utter disregard of the testimony of the three adult children of the couple.

Libellant and respondent were married in Italy in 1909 and lived together in Philadelphia from 1913 until they separated April 13, 1940. He was 61 years of age and she was 58 when the libel was filed. Six children were born of the marriage, three of whom are still living and all of whom testified for the respondent. Notwithstanding their clear and convincing testimony the lower court lightly brushes it aside by saying, "Respondent's children were naturally anxious to help their mother . . ." There is nothing in the record to indicate that their testimony was prompted by any such anxiety.

In his report the master stated that he "got the impression that this witness [Nicholas Celia, the son] was trying to tell the truth but at the same time wanted to help his mother, with whom he always lived." In our judgment the son, who has always lived at home, and the two daughters, who lived at home until they were married, had much greater opportunity to observe the conduct of their parents than the occasional visitors in the home who testified for the libellant. Incidentally, two of those were cousins and one the husband of a cousin.

While the master's report is entitled to the fullest consideration, especially on the question of credibility, because of his opportunity to hear and observe the parties and their witnesses, it does not come into court with any preponderating weight or authority which must be overcome by the opposing party. (*Langeland v. Langeland,* 108 Pa. Superior Ct. 375, 164 A. 816) ; and it is incumbent on this Court on appeal from a decree of divorce to examine the evidence de novo for the purpose of review and to make our own independent finding of the facts. *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350; *Helon v. Helon,* 157 Pa. Superior Ct. 587, 43 A. 2d 398.

The libel alleged cruel and barbarous treatment, indignities, and desertion but the decree was recommended and entered on the ground of indignities alone.

As stated in the report of the master: "The first marital difficulty, according to the libellant, occurred in 1929. He testified that although respondent was always pestering him for more money, he discovered that she, unknown to him, had accumulated a fund with which she contemplated purchasing a home. While the libellant admonished her for her failure to apprise him of this fact, he nevertheless borrowed more money to complete settlement and pay for the necessary repairs. Title to the property was taken in the name of the respondent." We are at a loss to understand what possible

ground libellant could have for objecting to his wife accumulating money for the purchase of a home after twenty years of married life, especially since she earned it by working as a seamstress "felling" seams on coats. The work was done at home with full knowledge of libellant.

Quoting further from the master's report: "Libellant testified that throughout his married life, and particularly after 1929 and until the parties were separated, the respondent constantly accused him of being intoxicated. This was practically a daily occurrence. While these accusations were utterly false and untrue, nevertheless the respondent hurled them at the libellant every time he came home."

On one occasion when libellant was testifying in the Domestic Relations Division of the Municipal Court of Philadelphia on a nonsupport charge brought by respondent, he said: "I didn't get drunk every day." The inference to be drawn from that statement would appear to refute the conclusion of the master that the accusations of the respondent as to libellant's drinking "were utterly false and untrue." Judge SHMIDHEISER, before whom the hearing was being held, in answer to libellant's statement that he could stop drinking altogether, said: "We don't want you to stop altogether but when you are drinking can't you stop at a point where you won't become too quarrelsome, too drunk." The son testified that when his father was under the influence of intoxicating liquor "he would be very touchy, and his reactions would be extremely violent on the slightest provocation. That is the main thing."

The only serious accusation made by libellant is that respondent on an occasion in 1932 threw a sugar bowl at him inflicting a small cut on his forehead. This was admitted by respondent but she testified, and she was corroborated by at least two of the children who were present, that she was defending herself against an attack by her husband who was drunk.

Ever since *Richards v. Richards,* 37 Pa. 225, 228, it has been settled that "Indignities provoked by the complaining parties are . . . no ground of divorce, unless when the retaliation is excessive." See, also, *Esenwein v. Esenwein,* supra; *Daly v. Daly,* 137 Pa. Superior Ct. 403, 9 A. 2d 192; *Welsh v. Welsh,* 142 Pa. Superior Ct. 421, 16 A. 2d 672; *Meligakes v. Meligakes,* 151 Pa. Superior Ct. 1, 28 A. 2d 815; *Verbeck v. Verbeck,* 160 Pa. Superior Ct. 515, 52 A. 2d 241; *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104. In our opinion the retaliation in this case was not excessive. Furthermore, the parties lived together eight years thereafter and from at least 1935 to 1939 without any particular incident.

We can find or think of no more appropriate way in which to describe the course of conduct, on which the decree in this case is based, than the description by STERN, J., now Mr. Justice STERN, in *Gabriel v. Gabriel,* 3 D. & C. 607, where he pointed out that the acts which occurred over a period of many years, if telescoped, seemed weighty, but when considered in their chronological setting were insufficient. That case is also cited to the following text in Freedman on Marriage and Divorce, Vol. 2, section 745, page 1458: "The duration of the marriage sought to be broken must inevitably affect the scrutiny with which the weight of the evidence will be measured, for the reluctance of the courts to sever the marriage relationship increases when the decree sought would destroy a marriage which has long endured."

The testimony of the son, of whom the master remarked in the course of the hearing "He is very honest," is most impressive and fully corroborates the testimony of his mother. He testified that he never heard the respondent use profane language towards the libellant; that the occasions when the father would be under the "influence" became more frequent after 1936; that he

saw him strike his mother on several occasions; that he frequently used profane language towards her; that every Sunday came to be regarded as "a black Sunday," because of his father's drinking and the ensuing argument; and that he went with his mother to the Municipal Court following the incident which caused the final separation on April 13, 1940, when he and his sister Clementine, who was then unmarried and living at home, were awakened by their mother's screams when libellant was trying to choke her.

It will serve no good purpose to discuss at further length the testimony contained in this voluminous record of upwards of 500 pages. Suffice it that after a careful examination and consideration of the evidence we are all of opinion that it fails to establish a legal cause for divorce and that the decree cannot be sustained.

The decree is reversed and the libel dismissed.