Mingone v. Mingone, Appellant.

Argued March 25, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Harry R. Kozart,* with him *Furia & DiCintio,* for appellant.

*Morris C. Solomon,* for appellee.

OPINION BY ARNOLD, J., July 15, 1949:

In this divorce action the husband charged his wife with indignities such as to render his condition intolerable and life burdensome. The case was referred to a master, who largely disbelieved the libellant, was not convinced by the testimony, and recommended the dis-

missal of the libel. The master found that the cause of the marital difficulties was libellant's conduct with other women.

The court below, which had not heard nor seen the witnesses, granted the divorce, and respondent appeals. Both this Court and the court below have the duty of making an independent examination and appraisal of the evidence, and the court below had no advantage over this Court in that respect. We agree with the report and findings of the master and therefore reverse.

The parties were married in 1930. At the time of the hearing the libellant was 38 years of age and his wife three years older. They had one child, born in 1932, who is living with the respondent. The libellant was a tailor and had been employed in two different establishments. By sewing, the respondent helped considerably in support of the family.

Libellant contended that his wife threatened to have an abortion before the birth of the child, and that she became pregnant at other times and did procure abortions. The wife flatly denied these allegations and testified that she always wanted children. There is no testimony to sustain a finding that she procured an abortion at any time.

He claimed that in 1933 and 1940 she threw a knife at him; that in 1938 she threatened to kill him with a knife; that almost every week for a period of eight years she threw dishes and pans at him, some of which would hit and some would miss; that she daily called him vile names. He further testified that on four prior occasions her conduct had compelled him to leave, but that friends effected a reconciliation; that in 1946 they had another of these arguments and that she struck him with a mirror and told him to leave. Since that time they have not lived together. He, of course, claimed that respondent's conduct made him nervous and caused him to lose weight. He testified, however, that with the exception of the

alleged abortion incidents, the arguments and troubles grew out of her accusations that he was "running around with other women," particularly one Iris Austin and later on one Inez Gell'Elmo, each of whom was married and was employed at the same establishment as he. Libellant's evidence consisted largely of generalities with a page after page repetition of the words, "her terrible temper," as the cause of their difficulties. He called his sister to corroborate him, but her testimony is very vague and leads to the conclusion that she is merely attempting to help out her brother. She admitted that the respondent made her clothes, and her testimony establishes that she remained on good terms with her sister-in-law until the final separation. If the witness' sister-in-law had treated her brother as she stated, under the circumstances it would seem that she would not be friendly with her. The testimony of the husband of libellant's cousin is of no value.

The respondent denied all of the allegations except that on some occasions she called him names. She averred that all of the quarrels and arguments were occasioned by libellant's conduct with other women, and that his guilt seemed clear because for months at a time he had no relations with her. She testified that the mother and a relative of Inez Gell'Elmo called at the house and in the presence of her husband vigorously condemned him for his conduct with Inez. He admitted the visits but denied that they charged him with misconduct. Inez Gell'Elmo was later divorced but the relationship continued. Her former husband testified in corroboration of the respondent. The libellant and Inez were seen walking arm in arm down Market Street in Philadelphia. They were followed until they came to Lit Brothers Department Store, where they were lost in the crowd. The libellant admitted this and gave no adequate reason for escorting this woman to the store. Most men have a well-known aversion to a shopping

expedition in a department store. We are convinced that he had a definite purpose other than shopping: to wit, to woo. His prior conduct with Iris Austin was not innocent, and accusations and threats were made by her husband to the libellant and his wife. These the libellant did not even deny. It makes no difference whether or not he was guilty of adultery with these women. He had no right to continue these associations which he knew were so offensive to his wife: Cf. *Wick v. Wick,* 352 Pa. 25, 42 A. 2d 76; *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609; *Abbott v. Abbott,* 75 Pa. Superior Ct. 483; *Wilson v. Wilson,* 163 Pa. Superior Ct. 546, 63 A. 2d 104.

The respondent, who was older than her husband, had gained in weight. According to the respondent, the libellant boasted to her of his success with other women; and referred to his wife as a "fat bastard," saying that she was not his type of woman and he desired them to be "slim and well formed." The evidence convinces us that the libellant was the author of his own woes, and that any indignities which he suffered were provoked by him.

It is therefore unnecessary to dispose of the respondent's petition to this Court, asking that the record be returned to the master for further testimony for the reason that after the appeal was taken, and on March 13, 1949, the libellant and this same Inez Gell'Elmo were found together in a bedroom of a hotel in Philadelphia in which they were registered as husband and wife; and that it was discovered that for a period of three years before they had frequently so registered in that same hotel. The answer raises only the question of the relevancy of the discovery.

Decree reversed and libel dismissed.