Opinion ry
 

 Hirt, J.,
 

 Tfie master found that the charge of desertion was sustained by the proofs, and the court adopting the same view entered a decree of divorce on that ground. The parties were married in 1923. The respondent left her husband and their common home on November 15, 1946,
 
 *54
 
 and has persisted in the separation since that date. The question is whether the libellant’s conduct which induced her to leave would have been sufficient to entitle her to a divorce on a complaint by her.
 
 Bunting v. Bunting,
 
 156 Pa. Superior Ct. 244, 40 A. 2d 135. The master concluded that the respondent and her witnesses were not credible as to the alleged indignities which caused her to leave her husband. The master in his report, said: “The testimony of respondent and her witnesses, considered in the light of the appearance of the parties on the witness stand, the dominant attitude of the respondent, and the apparent vindictiveness of most of her children toward the libellant, was not convincing to the Master. On the other hand, the apparent magnification of rather trivial incidents by the libellant in his testimony was likewise not convincing.” The master’s comment on libellant’s testimony refers to the charge of indignities coupled with desertion in his libel. We have given due consideration to the report of the master who had the advantages of seeing and hearing the witnesses and we are still unable to accept his findings on the controlling question of the credibility of respondent and her witnesses. The decree will be reversed.
 

 Both of the parties were born in Italy; libellant came here as an immigrant in 1920 and the respondent some years later. He has never earned more than a laborer’s wage. They lived frugally; both were industrious and ambitious to earn money and acquire property. Every year for 14 years, from about April to November the respondent worked on a truck farm and the children usually worked with her, at the insistence of the libellant. Two of them testified that they began this farm work with their mother at age 9. A substantial part of the children’s earnings was turned over to their parents. Respondent testified that she and her children earned as much as $2000 in a season in this work. One of the children refused to return to school at the end of the
 
 *55
 
 farm-work period in 1944 because of embarrassment in having fallen behind in his classes while away, and a year later a second child refused to return to school for the same reason. The respondent on these occasions concealed notices addressed to libellant, from a truant officer, to compel the children’s attendance and this was a source of serious turmoil in the household after libellant was summoned to appear before a magistrate.
 

 In all, the parties bought four pieces of real estate with their joint earnings. They lost one house by foreclosure. The family lived together at the time of the separation in a house bought in the name of libellant. All of the children left with their mother and are now making their home with her in a house which she has bought with her share of the proceeds of sale of two small properties which she had owned with her husband.
 

 We have no doubt that libellant presented a pathetic figure before the master. He is illiterate and, after more than 27 years in this country, he still has difficulty with the simple uses of the English language. The master observed that he had great difficulty in expressing himself in English. He was alone, without a single witness to corroborate his testimony in any material respect. But from a consideration of all of the testimony we must accept these facts as established: Three days after their marriage libellant insisted that respondent go to work. When she demurred he slapped her and she left him for a time. Throughout her married life she worked for wages in one form of employment or another. Libellant was unreasoningly severe and arbitrary in ruling his household. He excluded his children’s friends from the house and frowned upon their indulging in recreation in any form. On one occasion when he raised a commotion in the household the police were called to control him. He never established a sympathetic relationship with his children. He spent his evenings away
 
 from home
 
 and never was companionable with his wife. The re
 
 *56
 
 spondent testified that during 23 years with him, she was mistreated miserably. On one occasion when respondent was pregnant he kicked her with so much force that he thought it necessary to call a doctor for fear she was seriously injured, in her condition. On another occasion he tried to choke her. He threatened her and the children frequently and at times with serious injury amounting to mayhem. He often called the respondent vile names; on some of these occasions she returned them in kind. Since, however, he invited the exchange of epithets he is not in position to complain as to that.
 
 Verbeck v. Verbeck,
 
 160 Pa. Superior Ct. 515, 52 A. 2d 241;
 
 Sieno v. Sieno,
 
 163 Pa. Superior Ct. 479, 61 A. 2d 778.
 

 This course of irregular conduct of the libellant, persisted in with continuity, constituted such indignities under our divorce law as would entitle the respondent to a divorce on that charge were she a complainant. Moreover, in meeting the charge of desertion the burden on the respondent to justify her leaving, in our view of the testimony, has been met, and there is nothing in the record discrediting her and her witnesses in material respects. Cf.
 
 Bennett v. Bennett,
 
 159 Pa. Superior Ct. 136, 47 A. 2d 539.
 

 The parties have five children, the oldest 23 and the youngest 9 years of age. All but the youngest child, who was not called as a witness, testified on behalf of their mother and supported her in her justification of the separation. They were all unmarried and were attached to their mother Avitli Avhom they had been living. It is their testimony that has convinced us that their mother, notwithstanding Avhat the master called her “dominant attitude”, was telling the truth. They showed no more “vindictiveness” toward their father than his unnatural
 
 *57
 
 conduct would inspire in the minds of normal children. The respondent in her most serious charges is corroborated by the testimony of her children. Cf.
 
 Celia v. Celia,
 
 164 Pa. Superior Ct. 569, 67 A. 2d 447.
 

 Decree reversed and libel dismissed.