220 Pa. Superior Ct. 461 (1972)
Griffie, Appellant,
v.
Griffie.
Superior Court of Pennsylvania.
Argued December 9, 1971.
March 24, 1972.
*462 Before WRIGHT, P.J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.
J. Boyd Landis, with him Landis, McIntosh & Black, for appellant.
William F. Martson, with him Martson and Snelbaker, for appellee.
OPINION BY SPAULDING, J., March 24, 1972:
Appellant Virginia Griffie appeals from an order of the Court of Common Pleas of Cumberland County *463 overruling the findings of a Master and dismissing appellant's complaint in divorce a.v.m.[1] Appellant brought this action pursuant to § 10 of The Divorce Law of 1929 contending that she is entitled to a divorce because of indignities to her person by the appellee rendering her condition intolerable and life burdensome.[2] It is our duty to make an independent study of the evidence and then determine whether a legal cause of divorce exists. Eifert v. Eifert, 219 Pa. Superior Ct. 373, 281 A. 2d 657 (1971); Goldfine v. Goldfine, 201 Pa. Superior Ct. 462, 193 A. 2d 695 (1963). While the Master's findings of fact and recommendation that a divorce be granted are only advisory, where the issue is one of credibility and the Master is the one who heard and observed the witnesses, his findings should be given fullest consideration. Yohey v. Yohey, 205 Pa. Superior Ct. 329, 208 A. 2d 902 (1965); Green v. Green, 182 Pa. Superior Ct. 287, 126 A. 2d 477 (1956).
The parties were married in 1953 and have four children ranging in age from 6 to 16 years. The parties have become bitterly hostile toward each other. In the course of these proceedings appellant admitted having engaged in an extra-marital affair which was terminated *464 in January 1968. Her husband had previous knowledge of this. In September 1970, appellant moved from the joint homes of the parties to the home of her mother.
Appellant contends that she is entitled to a divorce based on testimony indicating that the appellee was frequently intoxicated and while in such condition was involved in three automobile accidents, slept on the front lawn, vomited throughout the house, provoked frequent arguments, threatened physical violence and made excessive sexual demands. Appellee disputes the severity of the incidents involved and further urges that his conduct, even if it did constitute grounds for divorce, was proper retaliation for appellant's affair in 1968.
The law of Pennsylvania is well settled that while mere drunkenness per se, no matter how excessive, is not an indignity, Shoemaker v. Shoemaker, 199 Pa. Superior Ct. 61, 72, 184 A. 2d 282 (1962); Egolf v. Egolf, 53 Pa. Superior Ct. 254 (1913), such indignities themselves are not excused because committed while intoxicated or caused by intoxicants. Shoemaker, supra; Cowher v. Cowher, 172 Pa. Superior Ct. 98, 101, 91 A. 2d 304 (1952). Indignities may consist of vulgarity, habitual humiliating treatment, intentional incivility, abusive language, malignant ridicule, and any other manifestation of settled hate and estrangement which is an affront to, and displays a lack of reverence for, the personality of one's spouse. Yohey, supra; D'Alessandro v. D'Alessandro, 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958). "The offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement." Boyer v. Boyer, 183 Pa. Superior Ct. 260, 271, 130 A. 2d 265 (1957); cited with approval in D'Alessandro, supra, at 200.
*465 Applying the above enunciated standards, appellee's conduct over the past four years constituted indignities to the person of appellant sufficient for granting a divorce. I concur with the Master in believing appellant's testimony as credible. He stated that: "[T]he defendant was frequently intoxicated throughout the marriage (N.T. 48, 49) and in the course of his condition brought humiliation to . . . the family by becoming involved in three automobile accidents. . . . (N.T. 11 through 15) [D]efendant called her trash and a whore (N.T. 17), that he mistrusted her and examined her clothes for evidence of seminal discharge, that he threatened her life with a gun (N.T. 25) and that he sought to have her submit to unnatural sexual practices.. . . He attempted intercourse while totally intoxicated, he refused to let plaintiff go to her job in the morning until she had submitted to sexual intercourse, set up a schedule of the number of times she was required to submit to the act, and generally treated the `act of love' as an instrument of punishment. . . ." R. 183a-185a. Appellee's conduct manifested settled hate and estrangement and was an affront to the personality of appellant. Such persistent vulgarity and abuse is sufficient to support the charge of indignities.
The crucial question therefore becomes whether appellant's brief indiscretion four years ago was sufficient provocation to excuse the subsequent, continuing indignities of appellee, removing appellant from the class of "innocent and injured" spouses who are entitled to a divorce under the statute.[3] The facts of the instant case *466 place it somewhere between two cases in which answers to this question were given, Wilson v. Wilson, 163 Pa. Superior Ct. 546, 63 A. 2d 104 (1949) and King v. King, 198 Pa. Superior Ct. 336, 181 A. 2d 694 (1962).
In Wilson, supra, the plaintiff-husband charged his wife with indignities and she defended on the ground that he was not innocent and injured. The indignities consisted almost exclusively of her disruptions of plaintiff's retail business establishment by loud and embarrassing altercations involving her charges that he was "running around" with one of his girl clerks. There was substantial evidence to confirm defendant's accusations as true. The Court held that: "[i]f respondent became unduly jealous as libellant charges, it was his own conduct . . . which produced it, and it was within his power to allay his wife's feelings by discontinuing his improper relations with his employe." 163 Pa. Superior Ct. at 549.
More recently, in King, supra, this Court granted plaintiff-husband a divorce on the ground of indignities despite his wife's defense that he was not an innocent and injured spouse and that his association with other women provoked her actions. The indignities resulted primarily from defendant's excessive drinking and included her public drunkenness, her calling plaintiff vile names, her falling asleep with a lighted cigarette and burning several pieces of furniture, and her indiscretions with other men while intoxicated. Defendant alleged that plaintiff was not "innocent and injured" since she had discovered him in an apartment with another woman twelve years prior to the divorce proceedings. Defendant believed that since then his infidelity had continued as evidenced by her finding lipstick on his clothing on many occasions. The Court accepted the Master's determination: "That the plaintiff was involved from time to time with other women and that *467 at one instance defendant caught him in another woman's apartment." 198 Pa. Superior Ct. 339. The Court nevertheless held that this finding: "[d]oes not preclude the plaintiff from obtaining a divorce. The plaintiff is not blameless in his marital behavior but divorce is not restricted to those complainants who are utterly without fault. Boyles v. Boyles, 179 Pa. Superior Ct. 184, 195, 116 A. 2d 248 (1955). `That plaintiff's conduct may have been "indiscreet" or "suspicious" is not sufficient.' Rech v. Rech, 176 Pa. Superior Ct. 401, 411, 107 A. 2d 601 (1954)." Id.[4]
The facts of the instant case closely parallel those in King. While appellant admitted a brief indiscretion of two months duration, this occurred four years ago At that time appellee also admitted "he had been having affairs with women during the course of the marriage.. . ." (Master's Report, R. 184a). Since then appellant has continually claimed her fidelity. While continuing to live with appellant, apparently condoning her prior indiscretion, appellee has increasingly abused her and accused her of adultery. He now seeks to have his behavior of the last four years excused as proper retaliation. However, as in King, since the one incident several years ago, appellee has no proof, but only mere suspicion of such conduct. On this basis he sought to have appellant give up a very desirable job to avoid any contact between her and a man with whom appellee suspected she was involved. She should not be required to do so. The indignities here, again similar to King, consisted mainly of appellee's behavior while intoxicated, which cannot be credited to any provocation on the part of his wife.
Therefore, we agree with the Master that appellant was an innocent and injured spouse and that the indignities *468 of her husband were not provoked by her. Appellee was the initiating irritant. As stated by Judge WATKINS in Pasternak v. Pasternak, 204 Pa. Superior Ct. 339, 348, 204 A. 2d 290 (1964): "`[W]e do not mean to pose him [her] as a paragon' but neither are we called upon to balance mutual delinquencies but rather to determine which party is least open to the charge of causing the situation. Bass v. Bass, 198 Pa. Superior Ct. 10, 14, 179 A. 2d 674 (1962); DiTroia v. DiTroia, 202 Pa. Superior Ct. 7, 11, 193 A. 2d 877 (1963)." Here, appellee has caused the situation.
The order of the lower court is reversed and appellant granted a divorce a.v.m.
WRIGHT, P.J., and JACOBS, J., would affirm the order of the court below.
NOTES
[1] Judge John A. MacPHAIL, President Judge of the 51st Judicial District, was specially appointed to hear the case, both Judges of the Courts of Cumberland County having disqualified themselves since appellant's paramour is a member of the Cumberland County Bar and appellant is a legal secretary in Cumberland County.
[2] The Divorce Law of 1929, Act of May 2, 1929, P.L. 1237, § 10, 23 P.S. § 10, provides in pertinent part:

"1. [I]t shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse: . . .
(f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome. . . ."
[3] See Gray v. Gray, 220 Pa. Superior Ct. 143, 286 A. 2d 684 (1971), at n. 4. A recent survey indicates that over 80% of Pennsylvania lawyers support no fault divorce legislation. Morrissey, A Sampling of Pennsylvania Lawyers' Opinions on the Divorce Law  Results of the Divorce Law Questionnaire, 43 Pa. Bar Assn. Quarterly 266 (No. 2, January 1972).
[4] See Eifert, supra, at n. 2, comparing the doctrine of "comparative rectitude" with Pennsylvania law.