## Cannon v. Cannon

*Theodore J. Zeller*, for plaintiff.

WIEAND, *J.*, June 24, 1975—This action in divorce, although uncontested, presents some very fundamental questions concerning divorce.

Plaintiff, Ann T. Cannon, and defendant, John F. Cannon, are husband and wife and continue to reside together in the family home at 228 North St. Cloud Street, Allentown, Pa. The parties have lived together in the marital home since 1958 and have two daughters, who also live with them. Plaintiff prepares meals, does the housework and takes care of the children. She is not employed. Defendant is employed and provides all needed support for the family. He is guilty of no marital infidelity and does not physically nor verbally mistreat his wife or children. Both parties love their children; they and the children eat meals together as a family and participate in other family activities. Plaintiff and defendant have continued to live together because of their religion and for the sake of the children.

In other respects, plaintiff testified, she and her husband are incompatible. They no longer possess a romantic love for one another, although a familial concern apparently continues. They occupy separate bedrooms, have participated in sexual relations only five times in 16 years, and do not engage jointly in social activities. These living arrangements have been achieved by mutual consent, and it does not appear that either spouse has been exclusively responsible for the alleged incompatibility. The grounds suggested for the grant of a decree in divorce were summed up by plaintiff as follows: "We are just existing there. We are living together

but not living together. We are going through the motions. We do it mostly for the children. I can't complain about him providing. He does provide and I do my part, but there is no relationship."

Should this family be broken by divorce because the romantic love between mother and father has disappeared? Should a divorce be granted upon request where grounds recognized by statute do not exist?

These are vexing questions. According to figures released by the National Center for Health Statistics of the Department of Health, Education and Welfare, a total of 970,000 divorces were granted in the United States during 1974. This was more than double the number of divorce decrees entered just ten years earlier in 1965. Has the marital relationship become nothing more than a companionship which can be terminated at will? What about the children who are born during coverture? Must they accept the consequences of a broken home because one parent has decided to terminate the marriage relationship? And last, but not least, what interest does society have in maintaining and strengthening the family as a viable unit in society?

The Divorce Law in Pennsylvania, i.e., the Act of May 2, 1929, P.L. 1237, was enacted in another era. It was enacted at a time when it was universally agreed that society, in the form of the state, had a direct interest in the continuation of the marriage and, therefore, became a third party to each and every action for divorce.

In recent years, societal restraints and traditions, including ties that hold the family together, have yielded increasingly to individual liberation—to a freedom to do one's thing. Thus, today, the marriage relationship has become one which is derived

essentially from the private contractual understanding of the parties. Having its genesis in the mutual consent of the parties, the contract seemingly can also be terminated at the will of the parties. A divorce law which has been premised upon an earlier and more traditional understanding of marital and family relationships has proved to be workable only because of a liberal (and perhaps even duplicitous) construction adopted by bench and bar. Divorces have been granted in uncontested cases for the flimsiest of reasons, largely because no real purpose would be served by refusing to recognize a status which the parties have already achieved. Because of this, masters now recommend decrees uniformly and automatically. This is what happened here.

Indignities to the person as a ground for divorce, the appellate courts have said traditionally, consist of a course of conduct rendering the condition of the innocent spouse intolerable and his or her life burdensome. Nichols v. Nichols, 207 Pa. Superior Ct. 220; Sokol v. Sokol, 205 Pa. Superior Ct. 459; Duhme v. Duhme, 168 Pa. Superior Ct. 406. It may consist of vulgarity, habitual humiliating treatment, intentional incivility, abusive language, malignant ridicule and any other manifestation of settled hate and estrangement which is an affront to, and displays a lack of reverence for, the personality of one's spouse. Fodor v. Fodor, 221 Pa. Superior Ct. 321; Griffie v. Griffie, 220 Pa. Superior Ct. 461.

No such course of conduct has been shown to be present in the instant case. Unsatisfactory sexual relationships, particularly where, as here, neither party is wholly responsible, have not been recognized as an indignity. Walper v. Walper, 198 Pa.

Superior Ct. 409; Bobst v. Bobst, 160 Pa. Superior Ct. 340; Davis v. Davis, 19 Cumb. 29; Young v. Young, 21 Cumb. 98. Similarly, the occupancy of separate bedrooms is not, per se, an indignity. Cafferty v. Cafferty, 40 Wash. Co. 132. The manner in which defendant handles the family finances, in view of the admittedly adequate manner in which he supports his family, and the failure of the parties to engage in social activities outside the home (their younger daughter is only six years of age) do not imply a settled hate and estrangement on the part of defendant. Nor can we conclude that plaintiff's condition has been rendered intolerable or life burdensome by any misconduct chargeable to defendant. Otherwise, we are unable to comprehend her continued presence in a marital home where constant association with defendant is assured. See: Fawcett v. Fawcett, 159 Pa. Superior Ct. 185.

Because a changing society has recognized that marriage is primarily a consensual companionship, we have also examined the record to assess the consequences of terminating this marriage without requiring strict proof of recognized grounds. Here there are children who must also be considered. Both parties have demonstrated a very substantial and commendable parental love and concern for their children. The likelihood of harm to the children from the consequences of a broken home outweigh by far any danger from a continuation of this family unit where mother and father, even though not socially and sexually compatible, have continued to reside together and provide a home for their children.

The circumstances of this case lead us to conclude, as we did once before in Kern v. Kern, 33 Leh. L.J. 486, at page 487: "Admittedly, this court has

liberally construed the archaic and unrealistic divorce laws in Pennsylvania in order to do practical justice in the times in which we live . . . But we have not yet reached the point where a divorce will be granted upon the whim of a party where no grounds appear." And our appellate courts have held that "a decree of divorce is not warranted because the marriage has developed into an unhappy one, or because the parties might not be able to get along well together." Fodor v. Fodor, supra, 323-324; Nichols v. Nichols, supra, 225.

In the instant case, moreover, there is something to be preserved. The parties have not achieved a permanent separation which they are asking the court to sanction. Instead, they continue to live together with their children in a family relationship. This relationship, even though imperfect, has not rendered plaintiff's condition intolerable and life burdensome. Under these circumstances a divorce will not be granted upon request.

In order to eliminate the possibility that plaintiff has withheld significant evidence in the belief that the granting of a decree would be automatic because of defendant's failure to appear and defend, we will afford her an additional opportunity to present evidence which discloses the existence of a cause of action in divorce. In the absence of such additional evidence, a decree must be refused.

## ORDER

Now, June 24, 1975, the recommendation and findings of fact made by the master are rejected insofar as they are in conflict with the foregoing opinion, and the above captioned action is referred back to the master for the consideration of such additional testimony as plaintiff may choose to submit.