## Donnelly *v.* Donnelly, Appellant.

*Divorce—Cruel and barbarous treatment—Indignities to person —Evidence—Sufficiency.*

A divorce on the ground of cruel and barbarous treatment is properly granted, where there was evidence that the respondent frequently swore at his wife in the presence of visitors and servants, circulated that she was of unsound mind, often quarreled with her and subjected her to constant humiliation without cause.

What is meant by indignities to the person is left undefined in the law and depends largely upon the circumstances of each case. It may consist of such a course of conduct as is humiliating, degrading, and inconsistent with the position of the libellant. No single act of indignity is a sufficient cause for a divorce, but when a course of conduct or continued treatment renders a wife's condition intolerable and her life burdensome, the acts complained of need not necessarily be such as to endanger life or health. It is sufficient, if the course of treatment be of such a character as to actually render the condition of any woman of ordinary sensibility and delicacy of feeling intolerable and her life burdensome.

Argued December 13, 1920. Appeal, No. 302, Oct. T., 1920, by respondent, from decree of C. P. No. 4, Phila. Co., March T., 1919, No. 2075, granting a divorce in the case of Anna H. Donnelly v. James H. Donnelly. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Libel in divorce. Before AUDENRIED, J.

The case was referred to James Alcorn, Esq., as master, who recommended that a divorce be granted. On exceptions to the master's report the court dismissed the exceptions and granted a divorce.

*Error assigned* was the decree of the court.

*Charles L. Smyth,* and with him *Clarence L. Cole* and *Emerson L. Richards,* for appellant.

*Henry P. Brown,* and with him *John Kent Kane,* for appellee.

OPINION BY ORLADY, P. J., May 21, 1921:

The libellant and respondent were married July 10, 1910; the libel in divorce was filed March 22, 1919; the decree overruling the exceptions to the master's report, and divorcing the parties was entered September 20, 1920.

After a careful examination of all the testimony, we agree with the master in his findings of fact, as being fully warranted under the evidence adduced before him, and in his conclusion of law, that the cause for divorce alleged in the libel was fully sustained, and that the respondent has offered such indignities to the person of his wife as to render her condition intolerable and life burdensome, thereby forcing her to withdraw from his house and family. The testimony is voluminous, and it is only necessary to refer to the clearly established facts.

At the time of their marriage the libellant was 19 years of age and the respondent 28. She was reared by wealthy parents and given all the advantages of education and society which her family station afforded. Her father at that time was an invalid, and by a deed of trust made in 1909, placed the practical management of his affairs in the hands of a trust company, his wife and one of his sons, under which, the libellant was allowed $5,000

a year, and of which she gave the respondent $3,000, with which to pay in part, their household expenses. This allowance continued until after the death of her father in 1913, when she became entitled to an income of about $18,000 per year, and she then increased the allowance to her husband to $4,000, and agreed that she, instead of her husband, should pay all of the household expenses.

At the time of their marriage he was a professor at the Southern High School, being the head of the department of English, and received a salary of $3,000 per year, so that after 1913 he received the $4,000 from his wife, and his salary of $3,000 per year, over which funds he had entire personal control, while the wife maintained the expenses of the household. Soon thereafter, he insisted on having her set apart for his personal use the sum of $100,000, so that it would produce $6,000 per year. There were the usual contradictions in regard to many facts relating to the differences between these parties, and while denying categorically some parts of the testimony of the libellant and her witnesses, he left unrefuted many important allegations. The omission to call certain available witnesses to confirm his statements on material matters, was rightly considered by the master as of special significance. There was abundant proof in the record to warrant the finding by the master of respondent's citicism of his wife beginning soon after their marriage, in not being able to take care of the house management; creating unpleasant scenes at the table in the presence of servants and others; frequently swearing at and cursing her and their servants in the presence of visitors and the children; declaring that his wife was crazy; that he threatened, if she did not accede to his demands, to have her declared insane; that her father had been crazy. He continually nagged and criticized her and exposed her to humiliating scenes without any cause on her part, so that, under the facts as rightly found by the master, she was warranted in leaving their home and returning to that of her mother.

She not only provided for the household expenses, but in an effort to purchase peace, gave him $4,000 per year of her funds, which he used without accounting to her. Being a lady of refinement and specially sensitive, this course of persistent insult, wilful neglect, outbursts of temper, contemptuous and humiliating treatment, resulted in a nervous breakdown and seriously affected her health. This condition was clearly established by the testimony of physicians, and confirmed by her restoration to former health after she withdrew from his home. He allowed himself for years to be the subject of his wife's bounty, and after continually demanding an increase of her benefactions, despite the unhappy conditions developed by his conduct, it should have been expected that the unfortunate condition described by the master would naturally follow. The facts being established by an abundance of testimony, the application of the law is not difficult.

In many respects the case is like that disclosed in Russell v. Russell, 37 Pa. Superior Ct. 348, where we held that when the wife is treated with disrespect by the husband in the presence of servants and others; insulting language used to her; reports circulated among her friends to the effect that she was of unsound mind, and other stories calculated to affect her good name and moral character; that by words and actions she had reason to fear attempts would be made on the part of the husband to deprive her of her liberty, and by reason of which she was kept in bodily fear, her health seriously affected and her condition rendered intolerable and her life burdensome, a divorce should be granted.

What is meant by such indignities is left undefined in the law, and depends largely upon the circumstances of each case; they must consist of such a course of conduct as is humiliating, degrading and inconsistent with her position and relations as a wife. No single act of indignity is a sufficient cause for a divorce, but when a course of conduct or continued treatment renders the wife's

Opinion of the Court.    [76 Pa. Superior Ct.

condition intolerable and life burdensome, they need not be such as to necessarily endanger life or health; it is sufficient, if the course of treatment be of such a character as to actually render the condition of any woman of ordinary sensibility and delicacy of feeling, intolerable and her life burdensome.   When a husband who is mentally responsible, pursues such a course of treatment as to naturally reduce a reasonable woman to the condition established by the evidence in this case, she is justified in withdrawing from his home, and entitled to the relief the law affords in securing a divorce.   In support of this well established rule, many authorities are found in our reports:  Howe v. Howe, 16 Pa. Superior Ct. 193; Yetter v. Yetter, 45 Pa. Superior Ct. 332;  Augenstein v. Augenstein, 45 Pa. Superior Ct. 258;  Crawford v. Crawford, 64 Pa. Superior Ct. 30.

The decree is affirmed.