## Breene v. Breene, Appellant.

*Divorce—Cruel and barbarous treatment—Indignities to person —Evidence—Sufficiency.*

What acts or course of conduct will amount to such indignities as will justify a court in making a decree of divorce have not been particularly defined, but they must be such as, in the language of the act, rendered the condition of the libellant intolerable and life burdensome.

568, (1921).]      Syllabus—Assignment of Error.

It is impossible to frame the definition of cruelty which will be of universal application. In determining what conduct constitutes cruelty, regard must be had to the provisions of the statute, and the circumstances of the particular case, keeping always in view the physical and mental conditions of the parties, and their social status, and it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable.

Any unjustifiable conduct on the part of either the husband or wife which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as seriously to impair the bodily health or endanger the life of the other, or which utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted, or even threatened or reasonably apprehended.

In an action for divorce on the grounds of cruelty, and indignities to the person, a decree of divorce is properly entered, when the respondent who was the wife of the libellant persisted in the excessive use of stimulants and drugs; constantly abused the libellant in the presence of their children and servants; threatened to blacken his name through the circulation of unfounded reports; accused him in the presence of relatives and friends of being crazy, and incited the children to join with her in attacks against him.

Argued April 17, 1921. Appeal, No. 40, April T., 1921, by respondent, by decree of C. P. Venango County, Aug. T., 1919, No. 35, granting a divorce in the case of William James Breene v. Susan Alaska Breene. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Libel in divorce. Before CRISWELL, P. J.

The facts are stated in the opinion of the Superior Court.

The court granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*Thomas & Thomas,* for appellant.

*James S. Carmichael, Trax & Parker,* and *A. B. Jobson,* for appellee.

OPINION BY ORLADY, P. J., July 14, 1921:

The appellate courts of this State have frequently held, that never ought divorces be easily obtained, for marriage is the most sacred of human relations and should never be dissolved without clear proof of imperious reasons. We may do wrong to the parties and their children, and to the public, when we aid one party in severing the relation without a clear necessity: Richards v. Richards, 37 Pa. 225. We are obliged by the Statute of May 5, 1899, P. L. 250, section 7, conferring our jurisdiction, to examine for ourselves the testimony in cases of this character, and to determine therefrom, independent of the findings of an examiner, or even in the court below, whether in truth and in fact a legal cause of divorce has been made out. Ever since the passage of this act, it has been held incumbent upon this court, on an appeal from a decree of divorce, except where there has been an issue and jury impanelled, to review the testimony and adjudge whether it sustains the complaint of the libellant. In every case in which the appeal was from a decree, not based upon the findings of the jury, the court has taken up, analyzed and reviewed the testimony, and in nearly every case has embodied its views in an opinion filed.

This case presents some unusual features. The parties were married in 1890, and the marriage relation was nominally preserved until 1919, though the intervening years were filled with controversies that are difficult of explanation. The husband was a poor boy, industrious, ambitious and rapidly achieved a prominent place in his profession as an attorney, and was identified with many important business enterprises. The wife was not physically rugged and was of an intensely nervous temperament. She was a devoted member of a religious denomination, while he was not identified with any, and many

of the differences that are detailed in this harrowing history may be attributed to an initial incompatibility, which under the stress of the marital relation, and his professional and business activities caused them to drift further apart as they grew older and the responsibilities of life increased. Five children, three sons and two daughters were born, of ages ranging from 16 to 28, at the time this libel for divorce was filed. While it is impossible for any human tribunal to accurately gauge the individual responsibility of the parties for the unfortunate resulting conditions, the only thing we can do is to follow the rule founded upon our decisions, to determine the accuracy of the decree from which the appeal is taken.

An answer to the libel was filed promptly, when a bill of particulars was required and one, containing 34 specifications was submitted. A hearing before the learned judge of the court below was had, covering a period of seven days and resulting in the taking of testimony which is presented to us in more than 1,000 pages of printed matter. The parties by agreement made a fair provision for alimony pending the litigation.

We may eliminate from our consideration the many distressing incidents described prior to the final separation of the parties. The libellant left his home on April 10, 1919, after a series of incidents induced by the wife which must under all reason be deemed as fully warranting his action. The attitude of the parties toward each other as of that date, necessarily depends upon their relations leading up to the separation. We ignore many extravagant expressions that were applied to each other; but one outstanding fact is clearly established, that during all their married life the husband was eager to secure and maintain a social, professional and business standing in his community in proportion to his energy and ability. His justification for separating from his wife and family is based upon facts indisputably proved, which establish a course of conduct on the part

of the wife, persisted in through many years, which clearly evidenced her mental attitude toward her husband and made it impossible for him to further maintain the relation of husband to her. It is idle to urge that the cruel treatments and indignities to the person, upon which a libellant must rely, are limited to the personal, physical assaults or offensive epithets directed to him as an individual. There are many decisions to answer such an argument.

We said in Crawford v. Crawford, 64 Pa. Superior Ct. 33, "What acts or course of conduct will amount to such indignities as will justify the court in making a decree of divorce, seems to be nowhere defined and perhaps they are incapable of specification or exact definition, but they must be such as, in the language of the act, render the condition of the libellant intolerable and life burdensome." It is impossible to frame the definition of cruelty, that will be of universal application. It has frequently been defined as actual personal violence, or conduct causing a reasonable apprehension of it, or such a course of treatment as endangers life, limb or health, and renders cohabitation unsafe. In determining what conduct constitutes cruelty, regard must be had to the provisions of the statute, and the circumstances of the particular case, keeping always in view the physical and mental conditions of the parties and their social status. And it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts (see 14 Cyc. 625) that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient.

We may aptly repeat what we said in Russell v. Russell, 37 Pa. Superior Ct. 353: "While the early rule as

announced in England and some of the American states was, that mental suffering, distress or injury, or bodily injury resulting from mental suffering, were insufficient to constitute cruelty, yet the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held, and has always been the rule in Pennsylvania, that any unjustifiable conduct on the part of either the husband or the wife, which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as seriously to impair the bodily health or endanger the life of the other, or which utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted, or even threatened or reasonably apprehended": citing May v. May, 62 Pa. 206; McMahen v. McMahen, 186 Pa. 485; Howe v. Howe, 16 Pa. Superior Ct. 193; Fay v. Fay, 27 Pa. Superior Ct. 328. In the analysis of these varied conditions, any evidence descriptive of such conduct is properly recognized: Donnelly v. Donnelly, 76 Pa. Superior Ct. 92. See also Krug v. Krug, 22 Pa. Superior Ct. 572; Biddle v. Biddle, 50 Pa. Superior Ct. 30; Crawford v. Crawford, 64 Pa. Superior Ct. 33; Cantor v. Cantor, 70 Pa. Superior Ct. 108; Fay v. Fay, 27 Pa. Superior Ct. 333.

Assuming that each party has offended against the established proprieties that are expected in the marital relation,—even under such unfortunate conditions there must be some point, beyond which human indulgence cannot be expected to submit, and resort to the courts may rightly be had to sever a relation no longer endurable, and which makes a further living together intolerable and life burdensome. To hold that there can be no legal relief from such a deplorable condition would likely result in such physical violence as would jeopardize the life of one of the parties. We are not called upon to balance such an account of mutual delinquencies, but

only to determine which party is the least open to the charge of causing the situation.

Taking the facts as found by the learned trial judge below as being warranted by the credible testimony adduced before him, with his personal knowledge of the parties and acquaintance with the witnesses, as well as their manner of testifying, we concur in his conclusion as to fact and law. While the respondent presented many witnesses, contradicting in some special particulars those called on behalf of her husband, and personally denying many facts regarded as discreditable to her, her husband is supported by such an array of witnesses that their testimony must be accepted as determining these facts against her. Her intense religious antipathy to her husband and his relatives; characterizing his mother as "an old bitch burning in hell," and calling her husband "a damned old son of a bitch"; her pronounced dislike of his friends and business associates; her profane and vulgar description of prominent professional and business associates; her contemptuous treatment of him in the presence of their children; her clearly established habits of using to excess intoxicating liquors, dope and other dangerous medicine; the vile epithets used by her, "She did not see why God took the good men and let such things as the libellant live," and the expressed wish that he would die when in the hospital, or in a ditch; her threat to blacken his name through the circulation of unfounded reports; her unwarranted statements accusing him to his face and in the presence of his relatives and friends of being crazy, and imputing to him unfounded marital infidelities; the unwarranted declaration to their children that the father kept other women, and that God would put a curse on any of them that would side with him against her; inciting the children to join with her in her attacks upon him; ignoring his physical necessities when sick and in a collapsed condition; threatening that she would so deal with him that his own people would not attend his funeral, are con-

clusive evidence of a state of mind on the part of the wife that can represent nothing short of a deep personal hatred and a malignant determination to make him odious in the sight of others. Such persistent conduct by the wife naturally resulted in the serious impairment of the health of the husband. It is especially unfortunate that the children of this marriage are divided in their support of their parents, but a careful analysis of the testimony of those now joining with the mother, shows that when they were entirely free from her influence, their statements of facts and narrative of incidents varied in many ways from that given by them at the hearing. We are not called on to give the reason for this change, but a large number of reputable witnesses testified that before the final separation, these same children frequently stated that they "Did not understand how their father stood their mother's conduct."

The respondent's excessive and persistent indulgence in stimulants and drugs naturally resulted in an estrangement between her and her eldest daughter, and the mere suggestion of a reconcilation between them by the husband, seems to have been an added cause for dislike on the part of the wife, to such a degree as to call her daughter a "damned thing, a slut," and her grandchild a "brat." These were not isolated incidents, but from the record there appear to be frequent happenings of like kind through a number of years.

This issue is framed on defined pleadings and proof, and remarkable as it all is, it must be decided, despite the unpleasant duty devolved upon the court below, and this court in reviewing the testimony. After a careful examination of the whole record, we are satisfied that the decision of the court below is fully warranted by the testimony, and the decree is affirmed.