## Hamme v. Hamme.

*Divorce—Indignities to the person—Cruel and barbarous treatment—Facts sufficient to sustain decree.*

Where the testimony showed that the husband frequently applied abusive epithets to his wife in the presence of his children by a former marriage; that he always referred contemptuously to his and his wife's infant child; that he contributed to the support of his three children of a former marriage, and neglected to support the libellant and her infant child; that she was obliged to earn money to support herself and her child; that he directed that no milk or groceries be delivered to her on his credit; that he took of her earnings to pay his own debts; that he arranged to have a mortgage foreclosed for the purpose of depriving her of a home; that he admitted he received written communications from other women; that the libellant was a delicate, refined woman; and that he was afflicted with a venereal disease: *Held*, that the libellant was entitled to a divorce under the law as stated in Breene v. Breene, 76 Pa. Superior Ct. 568.

Master's report in proceedings for divorce. C. P. York Co., April T., 1923, No. 109.

*S. Kurtz*, for libellant; no appearance for respondent.

Ross, J., Aug. 6, 1923.—The master's report contains an ambiguous conclusion and a doubtful recommendation. His findings of fact are so sparsely related as to require very close scrutiny of the testimony which was taken before him.

The libel charged the respondent with having offered such indignities to the person of the libellant as to render her condition intolerable and her life bur-

Hamme v. Hamme.

densome, and by cruel and barbarous treatment forced her to withdraw from his house and family.

The testimony shows that the parties were legally married on Nov. 1, 1920, and lived together until June 22, 1922, when, because of respondent's continued harsh and brutal treatment, libellant left the home. The respondent was a school teacher and house painter. When he married libellant he was a widower, having had three children born to him by his former wife. These children the libellant cared for and attended to, together with a child about two years old, which she bore to the respondent. The evidence shows that the treatment which forced her to withdraw from the habitation of her husband was abusive epithets which he very frequently applied to her in the presence of his children, who were aged respectively seven, eight and ten years. The child which she bore to him was always contemptuously referred to by him. While he contributed to the support of his own three sons born to him by his former wife, he refused and neglected to provide for libellant or her baby. She, libellant, had to sew for other people and thus earn money to clothe and support her baby and herself. He humiliated her by ordering the milkman and grocer to furnish no milk or groceries on his credit. He took money which she, libellant, had earned to pay his own debts. He arranged with a confederate to have a mortgage on the home foreclosed for the ostensible purpose of depriving libellant of the home. He tried to harass her by contrasting her with other women. He admitted receiving written communications from and associating with women other than his wife, and there was evidence that, during his married life, he was afflicted with venereal disease. In fact, all the testimony shows a continued course of treatment by the respondent which could not but have rendered the life of the libellant so burdensome as to grievously wound her mental feelings and did utterly destroy her peace of mind. She was a delicate woman, and the evidence shows her to have a degree of refinement with which the harsh and cruel treatment by the respondent stands in striking contrast. Although the records show that the subpoena in divorce was personally served on him, he did not appear to controvert or deny the charges against him upon which the libellant founded her application for divorce.

As was said by President Judge Orlady, in rendering the opinion of our Superior Court in the case of Breene v. Breene, 76 Pa. Superior Ct. 568 (quoting the syllabus): "It is impossible to frame the definition of cruelty which will be of universal application. In determining what constitutes cruelty, regard must be had to the provisions of the statute and the circumstances of the particular case, keeping always in view the physical and mental conditions of the parties and their social status, and it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable.

"Any unjustifiable conduct on the part of either the husband or the wife which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as seriously to endanger the bodily health or endanger the life of the other, or which utterly destroys the legitimate ends and objects of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or even threatened or reasonably apprehended."

Under the foregoing rules, the evidence in the present case shows facts upon which a divorce should be granted.

And now, Aug. 6, 1923, a decree of absolute divorce is ordered to be entered in favor of libellant, respondent to pay all the costs.

From Allen C. Wiest, York, Pa.