D'Alessandro *v.* D'Alessandro, Appellant.

Argued June 18, 1958. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(HIRT, J., absent).

*Charles F. Mayer,* for appellant.

*Michael Marchesano,* for appellee.

OPINION BY WATKINS, J., September 11, 1958:

This is an appeal from a decree of the Court of Common Pleas No. 1, of Philadelphia County, granting a divorce to Anthony D'Alessandro, the appellee husband, from Esther L. D'Alessandro, the appellant wife, on the ground of indignities.

The parties were married in Philadelphia, Pennsylvania on June 6, 1946. During their marriage they lived at several addresses in Philadelphia until November, 1955 when they moved to 1951 Carter Road, Folcroft, Delaware County, Pennsylvania. Although there were several prior separations, it was from this address that the final separation, resulting in this action, took place on October 11, 1956.

The wife was born in Italy on June 13, 1922, coming to the United States as a child. The husband was born on June 3, 1924 in Philadelphia. He is employed as a delicatessen clerk for Food Fair. There is one son, Michael, born of this marriage on July 24, 1948. The child resides with the wife. An order of support for the wife and child in the amount of $38 per week was entered in Delaware County, while the parties were still living together, on June 29, 1956.

This action was instituted on April 30, 1957. There were four hearings by the master, after which, a report was filed recommending a decree in divorce. The ten-day period for filing exceptions passed. The court below discharged a rule for permission to file exceptions nunc pro tunc and a rule for a final decree in divorce a.v.m. was made absolute.

It is clear from a careful study of this record that a case of indignities is made out from the testimony of the husband and his witnesses. This testimony is denied by the wife and her testimony would tend to prove that he was not an injured and innocent spouse.

"However, a divorce may be granted upon the uncorroborated testimony of the plaintiff . . . unless that testimony is not only contradicted but shaken by the defendant." *Miln v. Miln*, 175 Pa. Superior Ct. 613, 617, 106 A. 2d 862 (1954); *Hansell v. Hansell*, 182 Pa. Superior Ct. 158, 126 A. 2d 509 (1956).

We agree with the master and the court below that the testimony of the wife and her witnesses is confusing, contradictory and exaggerated beyond belief. We agree also with President Judge HAGAN, where he states in his opinion that, "Plaintiff's evidence, if believed, made out a clear case of indignities to the person. The evidence in defendant's case was to the contrary, thereby creating an issue of credibility which the Master resolved in favor of plaintiff. On the basis of our own examination of the notes of testimony, we believe that the Master very properly decided for plaintiff . . .".

Here, the findings depend upon the credibility of the witnesses. The rule is well settled as to the weight to be accorded to the master's findings and his determination of credibility. "The master's report although advisory only, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard, and in this respect his report should not be lightly disregarded." *Boyer v. Boyer*, 183 Pa. Superior Ct. 260, 130 A. 2d 265 (1957).

The master in this case had this to say with regard to the credibility of the witnesses. "The Plaintiff, his brother Angelo D'Alessandro, and Mrs. Zellas Wallace appeared to the Master as having given forthright and convincing testimony. Their testimony together with their general conduct on and off the stand created a favorable impression. As to Mr. Heim, Plaintiff's other witness, although shaken on his testimony referring to the wife's statement on the offer for sex

relations, he, nevertheless, appeared to the Master as sincere and credible.

"On the other hand, the opposite must be reported of the Defendant and her sister Irma D'Fillipo. Because of their general demeanor as well as the confusing and conflicting testimony heretofore related, the Master must record his lack of confidence in their statements. The wife's exaggeration did not aid her cause. Santer v. Santer, 115 Pa. Superior 1, 174 A. 651. Further, although represented by able counsel, her repeated absence from meetings without notice or explanation to her own attorney or the Master subjects her to unfavorable inferences, included among which might be that she herself did not believe in the validity of her own contentions, or that she sought to avoid further cross-examination. Her belated offer to reappear for further cross-examination after Plaintiff's rebuttal testimony was given as well as her explanation that she inadvertently forgot about the meeting (Exhibit C) did not correct the Master's impression of the Defendant. Since Defendant's other witnesses added nothing significant to her case, their credibility is unimportant." Where, in a divorce case the master's finding as to credibility is not at variance with the record, as here, it must be given the fullest consideration on appeal. *Hansell v. Hansell,* supra.

The master gave credence to the following testimony of the husband, which in some parts is corroborated by witnesses: that the trouble between the parties began in 1946 when his wife admitted to him that she had sexual relations with a man called Frank; that from that time on there was "constant bickering," and "hollering and screaming", which resulted in a number of separations, culminating in this one; that during long periods of time she would refuse to keep the house clean, to cook his meals or do his laundry; that

she constantly abused him, calling him obscene, vulgar and disgusting names, so foul that we will not repeat them here; stated that he was "plain no good" and that "she could have any man she wanted, that they were a dime a dozen"; that at a picnic in a public place she went off with a man and was gone more than two hours and explained her absence by saying she was in the lady's room; that she, on many occasions, threw things at him, and one time she struck him with the child's piggy bank, and at another time a pot of soup; that in a conversation with a saleslady in their home, which he overheard, she said that "she was out to get what she can from him, the home and anything"; that in the same conversation she accused him of giving her a venereal disease which she later admitted was from other men; that she told him that she had been treated for the venereal disease at the Woman's Medical hospital; and that her testimony discloses that she did visit the hospital for what she called "an infection of her private parts".

The final separation came as a result of a bitter quarrel over the repossession of their furniture. The husband claimed to have given her the money to make the monthly payments. The payments were not made and the furniture was repossessed. In this quarrel she created a scene in public, scratching and hitting him. She then moved the balance of their furniture to her present address.

The course of conduct complained of by the husband began shortly after the marriage in 1946 and was continuous for almost a ten-year period until the final separation. As a result of this course of conduct the husband "lost considerable weight, approximately 20 or 25 pounds, and there was aggravation so that everything I ate came right up."

"An indignity to the person is said to be an affront to the personality of another, a lack of reverence for the personality of one's spouse. The offense is complete when a continued and persistent course of conduct demonstrates that the love and affection upon which the matrimonial status rests has been permanently replaced by hatred and estrangement.

"Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement." *Boyer v. Boyer*, supra, at page 271.

Certainly, if the matter of credibility is determined in favor of the husband in this case, the recitation above set forth more than fulfills the requirement of the definition of indignities to the person. This case is a record of the manifestation of settled hate and estrangement.

The support order directed against the husband in Delaware County for the support of the wife and child, while the parties were living together, is urged as proof that the husband was not the innocent and injured spouse. The fact that a defendant in a divorce proceeding previously obtained an order against a plaintiff after an alleged desertion by him does not prevent the plaintiff from securing a divorce on the ground of desertion upon a proper cause shown. *White v. White,* 185 Pa. Superior Ct. 141, 138 A. 2d 162 (1958). This would apply with even greater logic to a cause based upon indignities to the person.

The burden of proving his case by clear and satisfactory evidence is upon the plaintiff and there must be a preponderance of the evidence in his favor. In our opinion the husband has met the burden of establishing, by a preponderance of the evidence, that his

wife offered such indignities to his person as to render his condition intolerable and life burdensome; that he is the innocent spouse, and that he is entitled to a divorce.

Decree affirmed.