## Shuman *v.* Shuman, Appellant.

Submitted December 12, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Irving I. Solit,* for appellant.

*Ralph B. Umsted,* for appellee.

OPINION BY WATKINS, J., March 21, 1962:

This is an appeal from the decree of the Court of Common Pleas No. 1 of Philadelphia County granting a divorce a vinculo matrimonii on the ground of indignities in favor of Dr. David Shuman, the husband-appellee, and against Myrtle Kuehn Shuman, the wife-appellant. The parties were married in June, 1932. The husband is a licensed osteopathic physician and the wife is a registered nurse. He was, at the time of the hearing, 52 years of age and she was 53. Four children were born of the marriage, David 23, Frederick 20, Stephen 19 and Karla 18 years of age respectively.

The parties have been separated since October 15, 1957 when the husband left the common domicile. At that time David, the eldest child, was a student at the Pennsylvania State University and the other three children remained with the wife. Subsequently, David left college and went to live with the husband and Stephen left the wife and went to live with the husband. Frederick and Karla continued to live with the wife.

After the marriage the parties resided for four years at Queen Lane, Germantown, Philadelphia, Pennsylvania, and thereafter at 34 East Washington Lane, Germantown, Philadelphia. The wife still resides at the Washington Lane house while the husband resides at 5313 Baynton Street, Germantown, Philadelphia. The master in this case held twenty-one meetings and the testimony and report is contained in 2011 record pages. The master made a very detailed report to which the wife took forty-five exceptions which were dismissed by the court en banc below.

It is, of course, our duty to review the evidence de novo but we have held many times that where a master's report indicates the testimony has been carefully analyzed and the credibility of the witnesses carefully weighed, the findings of the master are entitled to the fullest consideration. "The report of the master who saw and heard the witnesses is ordinarily entitled to the fullest consideration where, as here, credibility is in issue and the master's findings dependent thereon are not at variance with the record." *Sims v. Sims,* 188 Pa. Superior Ct. 439, 445, 149 A. 2d 528 (1959).

We agree with the court below "that defendant's testimony does not have the ring of truth about it and leads us to concur with the findings of fact and conclusions of law of the Master." The record discloses two recitations of facts, diametrically opposed to each other, so that some of the parties were lying and the master decided the credibility issue in favor of the hus-

band. Credibility having been determined in favor of the husband it is clear from a careful study of this record that a case of indignities is made out from the testimony of the husband and his witnesses.

The testimony discloses, inter alia, that the wife prior to and during December, 1942, scratched the defendant's face; that in 1943 she struck him with a rolling pin; and during the period from 1947 to 1957 she threw shoes, dishes, pots, chairs, and other objects at him; that she called him a sexual beast and continuously called him vile and opprobrious names that we need not repeat herein; and that the name calling at times took place in public, before outsiders, and in the presence of the children; that the wife wrongfully accused the husband of transmitting loathsome diseases to the children by failing to wash his hands after examining some of his patients; that the wife accused the husband of being intimate with other women and one patient in particular; that the accusations of infidelity were made in private and in a loud voice in the presence of third parties; that she continuously interfered with his practise of medicine; that she would annoy and harass the husband by disagreeing with his diagnosis of their children's ailments and methods of treatment; that she admitted telling their son Stephen that he would die if he underwent a tonsillectomy recommended by the husband and another surgeon; that she went through his professional records to obtain facts concerning his patients so as to degrade patients she was hostile to; that she told him he wasn't a regular doctor and that as a nurse she was a better diagnostician than he was; and that as a result of this continuous conduct his health was affected and his life unbearable so that he was forced to leave her.

There is no question that the recitation of facts by the husband and his witnesses evidence that kind of a continuous and persistent course of conduct that clear-

ly demonstrated that the love and affection upon which the matrimonial status rests had been permanently replaced by hatred and estrangement, constituting indignities to the person as defined by this Court in a long line of cases. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958).

As to the contention of the wife that the husband was not an injured and innocent spouse we adopt the disposition of this issue by the court below, as follows: "Finally, we also concur with the Master that plaintiff was not entirely without fault but we believe the following language used by your Honorable Court to describe the plaintiff-appellee in Cunningham v. Cunningham, 171 Pa. Superior Ct. 577, 581 (1952), is equally applicable to the plaintiff herein: 'There was some evidence that appellee was not completely without fault, and we do not mean to pose him as a paragon, but as was said in DiStefano v. DiStefano, 152 Pa. Superior Ct. 115, at 117, 31 A. 2d 357: "However, 'We are not called upon to balance . . . mutual delinquencies, but only to determine which party is least open to the charge of causing the situation.' Breene v. Breene, 76 Pa. Superior Ct. 568, 573, 574; and we think libellant, with the aid of his witnesses and respondent's testimony adequately satisfied and discharged the burden cast upon him." ' "

Decree affirmed.