Esposito *v.* Esposito, Appellant.

Argued June 15, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Alfred Marroletti,* with him *Joseph Alessandroni,* for appellant.

*Julius H. Tolson,* with him *Solomon, Tolson & Resnick,* for appellee.

OPINION BY WATKINS, J., September 13, 1962:

This is an appeal from the decree of the Court of Common Pleas No. 6 of Philadelphia County, granting a divorce a.v.m. to the husband-appellee, Joseph David Esposito, from the wife-appellant, Angelina Rita Esposito, on the ground of indignities to the person.

The parties were married on June 2, 1945. The husband, at the time of the hearing, was 39 years of age; the wife, was also 39. He is a life insurance agent em-

ployed by the John Hancock Insurance Company; the wife is unemployed. There are four children born of this marriage. They are, at the time of the hearing, Joseph Carmello Esposito, age ten; Matilda Esposito, age 8; Robert David Esposito, age 5, and David Esposito, three and one-half years of age; all four children reside with their mother at 113 North Cedar Lane, Upper Darby, Pennsylvania, and their father furnishes support to the children pursuant to a court order. The parties have been separated since January 30, 1960.

The Master in this case made a very clear and detailed report recommending the divorce and although we are under a duty to review the evidence de novo, we have held many times that where it is indicated that the testimony has been carefully analyzed, the credibility of the witnesses carefully weighed, the findings of the master, who saw and heard the witnesses, are entitled to the fullest consideration. *Shuman v. Shuman,* 197 Pa. Superior Ct. 439, 178 A. 2d 815 (1962); *Sims v. Sims,* 188 Pa. Superior Ct. 439, 149 A. 2d 528 (1959).

In the case at bar, Judge KELLEY of the court below, indicated the weight he attached to this master's report by holding: "The court, after careful consideration of the record in this case, agreed with the report and recommendation of the Master and has granted a decree in divorce for the reasons given by the Master in his report." After a careful study of this record and report we are in entire agreement with the court below.

This is a case where an easy-going, complacent husband was ruled for thirteen years by a nagging, domineering wife. The allegations of indignities that occurred during a period beginning about December 1, 1957 and ending with the separation on January 30, 1960, include the following: A continuous pattern of shouting and tantrums; reference to the husband as

stupid and statements to others concerning his stupidity and peculiarities; continuous accusations that he was dirty, filthy and unclean; arguments about his income, despite the fact that he earned $150 weekly and turned it all over to her with the exception of a fifteen-dollar allowance which she forced him to account for; continuous unfounded accusations of infidelity; frequent telephone calls and inspection of his clothing, his brief case and his desk drawers, for nonexistent evidence to support her suspicions; false statements that she had evidence of infidelity; and that all of the above complaints and charges were broadcast to friends, relatives and neighbors.

Beginning about April, 1959, she began to accuse him of being sick and mentally disturbed; discouraged his friends from visiting him by telling them he had mental trouble; that upon her insistent nagging he visited a psychiatrist; that when he discontinued the visits because he felt he had no need for them and because of their cost, she went into a tantrum and ordered him from the house; that she told the children that he did not love them; and that this course of conduct was continuous until January 30, 1960, at which time, when he returned from work he found the doors of his home locked and his belongings packed and placed in the back garden. He broke into the house and when his wife called the police, he agreed to leave after dark to avoid embarrassment.

Portions of the testimony of the husband, in particular the charges of uncleanliness, infidelity and mental derangement were corroborated by a number of witnesses. Witnesses for the wife, mostly relatives, corroborated her testimony in less essential matters but actually corroborated the husband as to the charges of infidelity and mental illness.

The master indicated that from his observation the husband was normal but that the wife was unable to

understand her easy-going husband whom she had dominated for thirteen years, beginning to stand up for his rights. He did not lose a single day from work for more than one and one-half years and the master found him to be an honest and truthful witness. The allegations of infidelity were clearly unfounded. The only basis for them, from her testimony, was that he must have a woman because of his change of attitude.

As the master well said: "If the wife's conduct prior to this time did not amount to 'indignities to the person', her conduct thereafter certainly did. She hounded and badgered the plaintiff almost incessantly to concede that he was mentally ill and needed psychiatric help. She broadcast her belief that he was emotionally or mentally disturbed. She unhesitatingly announced her opinion to her relatives, to relatives of the plaintiff, near and distant, to neighbors and friends. She tried to enlist the aid of many of them to induce the plaintiff to go to a psychiatrist. It became quite well known in the plaintiff's social and family circles that his wife thought he was unbalanced. . . . There is testimony by a psychiatrist that it was the defendant who was referred to him for attention and that, in the course of treating her, he wanted to see her husband. The psychiatrist testified that both had difficulties—she was depressed and he was anxious. His anxiety is understandable. More importantly it could not have been serious enough for defendant to make as much of it as she did and to broadcast it so widely and effectively. The fact is that plaintiff's difficulty, if he had any, was not serious enough to make him lose a single day's work in more than one and one-half years.

"In addition to her charges of mental illness, defendant by words and conduct persisted in a course of conduct whereby she accused her husband of having an affair with another woman. For months she and her father held over his head a threat relating to scraps

of paper containing handwriting resembling a female neighbor's and fished out of the toilet bowl in the parties' bathroom. These bits of paper were never tied to the plaintiff in any way. There was no real basis for defendant's accusations of infidelity and no real basis for her charges of mental illness."

In *Brandman v. Brandman*, 185 Pa. Superior Ct. 392, 397, 138 A. 2d 869 (1958), we said: "The accusations of infidelity, and the hiring of a detective to follow the appellee and report his actions to her, based on what was decided to be unfounded suspicions, certainly amounted to an indignity, which, together with the other circumstances contained in the record, would sustain this decree. 'Accusations of misconduct and infidelity made without foundation and persisted in so as to become a course of conduct, constitute a species of indignities and, when they are accompanied by other insulting and humiliating conduct, are sufficient to warrant a decree of divorce'. Wittmer v. Wittmer, 151 Pa. Superior Ct. 362, 30 A. 2d 174 (1943)." See Freedman, Law of Marriage and Divorce, Vol. 2, page 723.

In *Donnelly v. Donnelly*, 76 Pa. Superior Ct. 92 (1921), we held that a divorce is properly granted, where there was evidence that the respondent frequently swore at his wife in the presence of visitors and servants, circulated that she was of unsound mind, often quarreled with her and subjected her to constant humiliation without cause.

For more than one year this wife engaged in a continuous course of conduct consisting of unmerited reproach, intentional incivility, manifest disdain, abusive language, malignant ridicule, accusations of infidelity and mental unbalance, that rendered his condition intolerable and life miserable so that he became ill and nervous, losing his appetite and weight. The recitation of facts by all the witnesses in this case show that kind of a continuous and persistent course of conduct

that clearly demonstrates that love and affection upon which the matrimonial status rests had been permanently replaced by hatred and estrangement causing indignities to the person as defined by this Court in a long line of decisions. *D'Alessandro v. D'Alessandro,* 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958).

Decree affirmed.