## Bailey *v*. Bailey, Appellant.

Argued September 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Anthony A. Mandio,* for appellant.

*Donald W. Vanartsdalen,* with him *Vanartsdalen & Pratt,* for appellee.

OPINION BY WATKINS, J., November 15, 1962:

This is an appeal from the decree of the Court of Common Pleas of Bucks County, Pennsylvania, granting a divorce a.v.m. to the plaintiff-appellee, Martin J. Bailey, from the defendant-appellant, Elizabeth L. Bailey, on the grounds of indignities.

The parties were married on September 4, 1951; the marriage was the second for the plaintiff; the fourth for the defendant; the plaintiff, at the time of the hearing was 47 years of age; the defendant 57 years of age. The plaintiff was in charge of plant protection at the Fairless Hills plant of the United States Steel Corporation and earned a salary of $1000 per month, plus expenses. He had been employed by United States Steel since 1939. The defendant was a beautician at the time of the marriage. Since the separation she has been employed by the New Jersey division of motor vehicles. She is receiving alimony pendente lite.

The parties, up until the time of separation, on August 15, 1956, were living at 100 Fairfax Road, Fairless Hills, Bucks County, Pennsylvania. After the separation, the plaintiff lived at Edgely, Pennsylvania, and the defendant, at 6 Oak Lane, Trenton, New Jersey. There are no children of this marriage.

The master who saw and heard the witnesses gave a detailed report recommending the divorce and made a careful and painstaking analysis of all the testimony and after deciding the issue of credibility against the defendant, found that the grounds establishing indignities were amply proven. The court below said, "We believe we are justified in giving the fullest consideration to the report of the master since he saw and heard the witnesses and we concur with his findings as to credibility." After a careful study of this record, including the master's report, and the opinion of the court below, we concur with his conclusion as to credibility.

The master and the court below in determining credibility were impressed by some of the bizarre history of this unhappy marriage. The plaintiff, when he was about 25 years of age, entered into a marriage ceremony with a woman and there were two children born of this marriage. At the time of the marriage he knew she had been married but was advised, and believed, that her previous husband was dead. When it was discovered that, in fact, the former husband was alive, he consulted counsel and was advised that no marriage existed between him and this woman. In 1953 the woman in question obtained two divorces in Indiana on the same day, one from the first husband and one from the plaintiff.

This was the marital status of the plaintiff in 1951 when he married the defendant. At the time he met his present wife he knew her as Elizabeth Eldredge. There was evidence of intimacy prior to marriage and a false claim by the defendant that she was pregnant prior to marriage. On the application for a marriage license she swore that she had never been previously married. He knew that she had been married and divorced once before. In fact, she had been married three times and divorced three times, twice for adultery.

Another matter that was given great weight by the master and the court below was the evidence as to her age. The master found as a fact that she is about ten or eleven years older than her husband. She gave her birth date on the marriage license as September 28, 1907 while the evidence disclosed, and the master found, that she was born on September 28, 1901. As the court below said: "The date of her birth becomes an important consideration in this case . . . because of the suspicious circumstances surrounding the alteration of the original baptismal certificate and her insistence that she was born in 1907, when the original records unmistakably indicate to the contrary."

The record discloses many instances where the recitation of facts are diametrically opposed to each other, so that credibility is very much in issue and its determination in favor of the plaintiff by the master and the court below, with which determination we are in accord, weighs heavily in the final disposition of this case. With this determination, it is clear that the preponderance of the believable evidence amply supports the decree of divorce on the ground of indignities to the person. *Sims v. Sims,* 188 Pa. Superior Ct. 439, 445, 149 A. 2d 528 (1959) ; *Shuman v. Shuman,* 197 Pa. Superior Ct. 439, 178 A. 2d 815 (1962).

As the court below said concerning the testimony as to the background of this marriage, specifically as to prior marriages and age, "We have set forth the background of the parties at the time of the marriage and the age problem not as going to the merits of the present application for divorce but in partial substantiation of the master's accepting the testimony of the plaintiff rather than the defendant, where issues of credibility were involved."

In this case the chief complaint of the defendant concerning her husband, if believed, was his drinking. There was testimony that she consistently complained

to everyone that would listen, that he was an alcoholic. It seems apparent that this was quite improbable in view of the responsible position the plaintiff held with the United States Steel Corporation. He had been employed by that company since 1939 when he was a craneman and by application and training went into police work and earned promotions until he was in charge of security. He organized and was in charge of guard, fire, rescue ambulance and related services for the corporation. Approximately 210 employes were subject to his supervision. His salary was $1000 per month. It is difficult to believe that this plaintiff could hold such a responsible position, if, in fact, he had been an alcoholic, of which there was no proof, or if his drinking to excess, as described by the defendant, was true.

The allegations of indignities contained in this record, which began about 1953 and continued until the separation of the parties on August 17, 1956, include the following: A continuous pattern of quarreling and tantrums; reference to the plaintiff as a dirty bastard, a dirty rat, a big jerk, a drunk, a stew-bum, a drunken slob and a drunken alcoholic; that she quarreled with her landlady and with neighbors in which her use of foul language embarrassed him; that she accused him constantly of being an alcoholic; and accused him of being sexually impotent. This continual abuse took place at home and in public, and at his place of business and was made to neighbors, friends, strangers and business associates.

She threw and struck him with a large ash tray and on another occasion tore his clothing. She embarrassed him by abusive telephone calls to his office, so that he was forced to use a public phone to placate her to save embarrassment in his office. As the court below says: "The record is replete with individual occurrences recited by both the husband and wife in respect to various

disputes and incidents. These have been set forth at length by the master and we see no occasion to reiterate them. However, several of them are of sufficient import to justify our referring to them individually. One of these occurrences took place in the spring or early summer of 1954. At that time the plaintiff was about to use the family automobile to attend a 6:30 meeting of a police chiefs' association. Mrs. Bailey told the plaintiff that she had a guest and it was necessary that he leave the vehicle for the defendant in order that she might take the guest home. When the plaintiff refused to leave his car for that purpose, the defendant attempted to pull him from the car, swore at him loudly in the hearing of neighbors, and it was with difficulty that the plaintiff extricated himself and drove away.

"After the parties had separated and an agreement reached between counsel as to the disposition of property, one of the terms of which was the delivery of the plaintiff's automobile to him on December 21, 1956, the plaintiff called for the car at approximately one o'clock in the afternoon, no time of delivery having been agreed upon. Defendant refused to release the automobile, screamed, and attempted to drag the plaintiff from the vehicle. His coat was torn by the defendant during this melee and when the defendant could not dislodge him from the car she entered the car as he drove away. After further considerable difficulty, the plaintiff was successful in obtaining the custody of the car. Although the conduct of the plaintiff in this instance is not entirely free from blame, his explanation of the incident is much more satisfactory to the court than that given by the defendant. . . .

"We are convinced from a careful reading of the notes of testimony that the defendant's course of conduct toward the plaintiff constituted indignities as that term is used in our divorce code and as it has been in-

terpreted by our case law. In addition, we believe we are justified in giving the fullest consideration to the report of the master since he saw and heard the witnesses and we concur with his findings as to credibility. Gensemer v. Gensemer, 176 Pa. Superior Ct. 508. Our independent evaluation of the testimony coincides with that of the master, for we believe that the defendant deliberately lied as to some matters, including her age, and in the words of Turner v. Turner, supra, p. 523, her testimony 'discloses many contradictions and inconsistencies, while plaintiff's testimony appears to us to be quite straightforward and reasonable, as evidenced by his willing admission of his own weaknesses'. In addition, a number of witnesses substantiated the plaintiff as to various matters in dispute, whereas the defendant persisted in her denial of situations even where an array of witnesses definitely contradicted her."

There is no question but that the plaintiff's knowledge of the defendant's continuous tales concerning his alleged sexual incapacity and alcoholism, which could only have been told with the malicious intent to embarrass and humiliate him, made his condition intolerable and his life burdensome. The record is replete with evidence of that kind of a continuous and persistent course of conduct that demonstrated that the love and affection upon which the matrimonial status rests had been permanently replaced by hatred and estrangement, constituting indignities to the person as defined by this Court in a long line of cases. *D'Alessandro v. D'Alessandro*, 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958).

As to the contention that he was not an innocent and injured spouse, we adopt the language of the court below where he held: "We also find the plaintiff to be an injured and innocent spouse, although his drinking may have contributed to the disharmony in the home.

As was said in Cunningham v. Cunningham, 171 Pa. Superior Ct. 577, 581: 'There was some evidence that appellee was not completely without fault, and we do not mean to pose him as a paragon, but as was said in Di Stefano v. Di Stefano, 152 Pa. Superior Ct. 115, at 117, 31 A. 2d 357: "However, 'We are not called upon to balance . . . mutual delinquencies, but only to determine which party is at least open to the charge of causing the situation.' Breene v. Breene, 76 Pa. Superior Ct. 568, 573, 574; and we think libellant, with the aid of his witnesses and respondent's testimony, adequately satisfied and discharged the burden cast upon him." ' "

Decree affirmed.