## Perate *v.* Perate, Appellant.

580

·Argued· March 20, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

· ·Louis S. Cali, for appellant.

·I. S. Bernstein, for appellee.

OPINION BY WATKINS, J., April 18, 1963:

This is an appeal from the decree of the Court of Common Pleas No. 3 of Philadelphia County, granting a divorce a.v.m. to the plaintiff-appellee, William M. Perate, from the defendant-appellant, Santa Perate, on the ground of indignities to the person.

As the court below points out, this case largely turns on the sharp issue of credibility in favor of the husband, that the wife was guilty of indignities and that the husband was the injured and innocent spouse.

The master recommended the divorce and made a 44-page report which indicated a careful and painstaking review of the testimony, consisting of 736 pages, which testimony was taken at six hearings before the

master. He had the advantage of personal observation of the parties and their witnesses, found that the evidence offered by the plaintiff more worthy of belief than that offered by the defendant. After a careful study of this record we are in accord with the conclusions of Judge WATERS, the opinion writer for the court en banc below, where he said: "We concluded that the master properly weighed the evidence and, aided by his observation of the witnesses, found the evidence offered by the plaintiff more worthy of belief than that offered by the defendant. The master in this case is an experienced attorney in whose ability and impartiality we repose every confidence. To justify ignoring the master's evaluation of credibility there should appear from a detailed analysis of the record inconsistencies of fact, act, time or space which weaken his findings or a strain of consistency of such matters which impel the conclusion that the master improperly resolved the issue of credibility. However, from our independent analysis of the evidence we are in accord with his findings." *Bailey v. Bailey,* 199 Pa. Superior Ct. 534, 185 A. 2d 632 (1962).

The parties were married on November 15, 1947; the plaintiff is 39 years of age, the defendant 37; there are two children of this marriage, Michael, age 14, and Mary, age 5, and they are in the custody of the wife. The allegations of indignities began from the outset of their marriage and are summarized by the court below as follows:

"The testimony of the plaintiff and his witnesses established the fact that one of the basic causes of the parties' difficulties lay in the defendant's refusal to live away from or to leave her parents. Another basic cause was the defendant's rejection and disdain for the plaintiff—socially, physically and in virtually all areas of their marriage relationship. The defendant engaged in various patterns of abuse, varying from the

gross to the subtle. She frequently became abusive by way of name-calling, calling him such names as 'son-of-a-bitch', 'bastard', 'no goddam good', 'a run around', 'a big bastard' and 'whore-master'. More subtle was the fact that the plaintiff was obliged to live in someone else's home with the consequent feeling that he was not free to express himself and the feeling that he could not display any affection for his wife without his mother-in-law as an audience. As a result of the numerous refusals by the defendant to move away from her parents' home, he was subjected to 'four years of arguments' over all kinds of odds and ends. The defendant invariably sided with her mother on the occasions of these arguments and with her uncle when he threatened the plaintiff with a butcher knife for disciplining or training his own son.

"The plaintiff described the pattern whereby the defendant persistently complained about his working hours, how she made various accusations that he was running around with other women instead of supporting her and the children. This occurred despite the uncontradicted testimony that he turned over his entire salary to his wife receiving some spending money in return. The plaintiff described in detail the frequent rejections and repudiations to which he was subjected both publicly and privately. He detailed how she belittled and embarrassed him in front of his family and friends. She called him at his office constantly until he became the butt of jest from his fellow workers. The defendant rebuffed him over and over, told him to get out or to stay away, told him that she didn't love him any more. He described many instances of the defendant throwing things at him, such as a knife, or a dish or ash trays. On at least eight or nine occasions she threatened him with a knife. For example, on one occasion she banged a knife on the table and said, 'Jesus Christ Almighty, if I ever stick this thing in you, you

will feel it.' He usually got out or out of the way because he felt she could hurt him."

The husband testified that because of the course of conduct to which he was subjected he became ill and placed himself under the care of a physician; that he was irritable and jumpy; that he couldn't eat or sleep properly and went from 215 pounds to 152 pounds and that his health improved since the separation in January, 1960.

As to the contention that he was not an injured and innocent spouse, the master and the court below again ruled against the defendant as to credibility and the court below said: "The defendant's few complaints against her husband lacked the impact of reality; she endeavored to couch her attitude and her testimony in superficial terms of love, but her manner of speech to and of her husband was a sheer demonstration of disdain, ridicule, hatred and contempt." As to the husband, "He conveyed the impression to the Master of being firm and truthful and when he was not sure of his recollection, he said so. The Master was convinced that the substance of his testimony was not challenged in cross-examination and there was only a nibble at inconsequential details."

There is no question that the believable testimony in this record establishes a course of conduct that subjected this husband to a combination of disdain, contempt, neglect, vulgarity, ridicule, unmerited reproach and a clear manifestation of settled hate and estrangement which constitutes indignities to the person as defined by this Court in a long line of cases. *D'Alessandro v. D'Alessandro*, 187 Pa. Superior Ct. 194, 144 A. 2d 445 (1958). And what we said in *Bailey v. Bailey*, supra, at page 541, is equally applicable here. " 'As was said in Cunningham v. Cunningham, 171 Pa. Superior Ct. 577, 581: "There was some evidence that appellee was not completely without fault, and we do

not mean to pose him as a paragon, but as was said in Di Stefano v. Di Stefano, 152 Pa. Superior Ct. 115, at 117, 31 A. 2d 357: 'However, "We are not called upon to balance . . . mutual delinquencies, but only to determine which party is at least open to the charge of causing the situation." *Breene v. Breene,* 76 Pa. Superior Ct. 568, 573, 574; and we think libellant, with the aid of his witnesses and respondent's testimony, adequately satisfied and discharged the burden cast upon him.' " ' "

Decree affirmed.