## Commonwealth ex rel. Friedrich v. Friedrich

*William R. Cooper*, 2nd, for petitioner.

*William L. Goldman*, for respondent.

SATTERTHWAITE, J., May 21, 1963.—Relatrix by these proceedings sought an order against defendant, her husband, for the support of herself and the parties' younger daughter, Emileen, 12 years of age. After hearing, the writer of this opinion entered an order against defendant in the amount of $20 per week for the support of the daughter, but refused to find liability in favor of relatrix, on the ground that defendant had established cause for divorce. The within opinion is prepared and filed by reason of notice of an appeal by relatrix to the Superior Court. Although counsel for relatrix, not a member of the bar of this court, has not extended the courtesy of any statement of the questions involved, this opinion is drawn upon the assumption that no complaint is intended as to the order entered for the daughter's benefit, and that the only occasion for the appeal is the refusal to find in favor of relatrix.

The parties were married on November 25, 1943. They had two children; the elder daughter Marilyn, 18 years of age in November, 1962, is gainfully employed and is not a subject of the within proceedings, although she still resides with relatrix. It is clear from

all the evidence that the marriage has been an unhappy one for many years. After numerous prior temporary separations, the parties' residence together in the marital domicile owned by the entireties, was terminated by defendant's permanent removal on November 12, 1962, and divorce proceedings instituted by defendant are now pending.

The evidence adduced at the hearing in this case revealed an unusually sordid picture of marital discord with typically irreconcilable charges and recriminations. The only real problem thereby presented was the purely factual issue of credibility, and that question was resolved in defendant's favor under the testimony and various circumstances of the proceedings, including the manner and occasion of the institution thereof and the testimony, attitude and demeanor of the parties in the courtroom. As noted in the transcript at the close of the hearing, defendant's testimony was given credence and relatrix was found to be unworthy of belief as to disputed factual matters. Upon such determination, the record amply justifies the conclusion that for a considerable part of the marriage defendant has been the long-suffering victim of a foul-mouthed, vituperative, grasping wife, who finally goaded him into the separation which she had suggested for many years and which he had frequently said he would effect when the older daughter reached the age of 18; and, further, that the within proceedings commenced in bad faith and out of a spiteful vindictiveness, are factually lacking in any legal merit insofar as relatrix is personally concerned.

The record is replete with evidence that relatrix over the years has been guilty of various courses of conduct constituting indignities to the person of defendant. One was her frequent, and admitted, accusations, with no demonstrated reasonable basis, that habitually he went out drinking with whores; in fact,

on instances when he would not be at home which provided the occasion for such tirades, he had been engaged by his duties as a Pennsylvania State Policeman, with over 25 years service, either on regular assignment (with one day and two nights off per week) or on special details running into his normal time off. In further connection with his employment, she has threatened to cause trouble for him with his superior officers, falsely accused him of accepting graft, and expressed the hope that he would be killed in the line of duty, even intimating that she would herself hire a "cop hater" for that purpose. Twice, since the parties have occupied separate bedrooms in February, 1959, she wakened him with his service pistol in her hand to show how easy it would have been for her to kill him if she wished.

Another and even more constant and aggravated form of misconduct by relatrix over the years was her almost interminable and hounding use of language and epithets, which were not merely unseemly and vulgar but actually the most vile and obscene gutter-type opprobrium, directed toward defendant, his aged mother, his friends and even the parties' daughters. No useful purpose would be served by quoting the filthy utterances expressed as a matter of routine by relatrix; suffice it to note that they usually included obscenities of the four-letter category and almost inevitably carried a sexual connotation. While relatrix attributed the same type of outbursts to defendant, the latters' explanation is accepted that he replied in kind only after her vilification had so badgered him for hours on end as to exhaust his patience and self control.

Various other continuing manifestations of her settled hate, estrangement and disdain for defendant are shown by the testimony; while the parties were still cohabiting she disparaged his sexual prowess,

comparing his with a man she had known before marriage, and indicating that his lack of ardor was due to his affairs with other women. Although she attributed their sexual problems to his demands for unnatural relations, her testimony on this score is not convincing in face of his denials, and her frequent harking back to this subject in the course of her examination and cross-examination with no relevance to the particular matter then under inquiry itself corroborates the inference of her malignant attitude toward him.

She never made breakfasts for him and seldom prepared lunch. She regarded all their jointly held property, to a large degree provided by defendant, as hers alone, and frequently said so in forceful terms, requesting defendant, and on occasion even the older daughter, to leave so that she could enjoy it by herself.

As already noted, defendant on several occasions in order to avoid the tirades directed toward him temporarily moved out of the marital domicile for brief periods. He suffered prostate trouble and ulcers, apparently from the tension of the parties' domestic problems. At all times, however, he more than adequately provided financially for relatrix and the children, paying off large bills which had been run up while she was managing the family funds and providing her with types of clothing and vacation trips which would be ordinarily considered luxurious to those in their economic station. Even after the final separation in November, 1962, he sent her biweekly checks for $95, later $100, representing approximately one-half of his take-home pay as a State Trooper, his only income.

Ten days before Christmas, 1962, defendant returned to the parties' residence to give his daughters some money for the holidays and found the locks changed on the entireties dwelling so that he was un-

able to gain entrance; although relatrix was present, she refused to admit him. He later sent checks for the girls through the mail. On Christmas Eve, having just been paid late in the day after banking hours, defendant went to the house and left $100 in cash in an envelope in the mailbox for relatrix. She claimed at the hearing that she never received this money. In any event, without further word to him, and actually contrary to the advice of counsel, whom she had consulted in November, on January 5, 1963, she swore out a warrant for defendant's arrest for nonsupport under section 733 of the Penal Code, and defendant in fact was taken into custody upon service thereof, and required to post bail. Notwithstanding this unnecessary, spiteful and irresponsible disregard of defendant's status as a State Police officer and the resulting embarrassment caused him as such by the totally pointless arrest, when an action under the Civil Procedural Support Law would have been an equally available remedy, defendant continued even thereafter to send her $100 biweekly until advised by counsel in February, after an unsuccessful conference to effect a settlement, to cease payments to her and to remit $15 per week for the younger daughter only.

Relatrix' attitude and demeanor at the hearing, in the opinion of the undersigned hearing judge, was such as to destroy any confidence in her credibility. While on the witness stand she was markedly vindictive and overly selfrighteous in manner and tone; when not actually evasive or nonresponsive to questioning, she replied largely in generalities; as confronted on cross-examination and in rebuttal with defendant's various complaints against her, she frequently would confine her answer to the single word "never", or couple a tacit admission with a vague and unsatisfactory purported explanation or mitigation. While defendant and his

witnesses were testifying, she would make disparaging remarks at counsel table, sotto voce but audible and disturbing to others in the courtroom. Another indication of her lack of good faith and avaricious motivation is found in defendant's uncontradicted testimony as to a discussion between the parties in June, 1962, on the subject of separation and attempted settlement of their affairs. Defendant then offered to deed the entireties property over to her, pay back bills aggregating almost $1,000, transfer two automobiles to her name, and pay $15 per week for support of the younger daughter. Relatrix rejected this proposition and demanded in addition thereto $5,000 in cash, plus payment of $100 per week, the latter amount being actually in excess of defendant's earnings as she well knew. While no significance probably should be given to her refusal to accept his offer, it is of some consequence that she did not deny her patently outrageous counterdemand; her only explanation therefor was that she did not believe in divorce, a subject not even mentioned in the discussions so far as the testimony disclosed.

Defendant, on the other hand, gave the impression of sincerity and truth while on the witness stand, and was quite visibly affected and emotionally distraught during his recitation of the parties' marital problems, an unusual manifestation for a man with his police background and experience, with no indicia of being feigned or put on. While we would not be so naive as to suggest that he was entirely without fault or wholly free from blame for the unhappy situation of the parties' marriage, nevertheless, his conduct certainly was not the real cause of their difficulties. He is not required to be absolutely blameless in order to qualify as the innocent and injured spouse: Bailey v. Bailey, 199 Pa. Superior Ct. 534. His association with one Alma Whitesell not, incidentally, shown to have been adul-

terous in any event, did not commence until long after the bulk of the indignities hereinabove outlined had already been inflicted. Even if that relationship was undue and improper, particularly as it apparently became closer since Christmas, 1962, it would not defeat his right to a divorce on grounds theretofore already accrued: Bass v. Bass, 198 Pa. Superior Ct. 10.

In sum, defendant's evidence is persuasive that he had sufficient and valid grounds for divorce against relatrix on the ground of indignities to the person such as to make his condition intolerable and life burdensome. Compare Bass v. Bass and Bailey v. Bailey, supra. Accordingly, he is not required to furnish her support: Commonwealth v. Callen, 165 Pa. Superior Ct. 163. See Commonwealth ex rel Reddick v. Reddick, 198 Pa. Superior Ct. 111, 114, and cases cited.

The within opinion is hereby directed to be filed and made a part of the record of the above-captioned case.